FILED
CLERK, U.S. DISTRICT COURT

10/14/2021

CENTRAL DISTRICT OF CALIFORNIA
BY: _____JB_____ DEPUTY

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

April 2021 Grand Jury

| UNITED STATES OF AMERICA, | CR 18-172(A)-GW |
|---|---|
| Plaintiff, | F I R S T |
| | S U P E R S E D I N G |
| v. | I N D I C T M E N T |
| MICHAEL LERMA,<br>  aka "Pomona Mike,"<br>  aka "Big Mike,"<br>SEFERINO GONZALEZ,<br>  aka "Spooky,"<br>CARLOS GONZALEZ,<br>  aka "Popeye,"<br>JUAN SANCHEZ,<br>  aka "Squeaks,"<br>JOSE VALENCIA GONZALEZ,<br>  aka "Swifty,"<br>KELLY DESHANNON, and<br>DANIEL DIAZ,<br>  aka "Bugsy,"<br>  aka "Fam Bam," | [18 U.S.C. § 1962(d): Racketeer Influenced and Corrupt Organizations Conspiracy; 18 U.S.C. §§ 1959(a)(1), (3), (5), (6): Violent Crimes in Aid of Racketeering Activity; 18 U.S.C. § 1111: First Degree Murder Within the Special Maritime and Territorial Jurisdiction of the United States; 18 U.S.C. § 2119(2): Attempted Carjacking; 21 U.S.C. § 846: Conspiracy to Distribute and Possess With Intent to Distribute Controlled Substances; 21 U.S.C. §§ 841(a)(1), (b)(1)(C): Possession with Intent to Distribute Controlled Substances; 18 U.S.C. §§ 924(c)(1)(A)(i), (ii), (iii): Possession, Use, Carrying, Brandishing, and Discharging of a Firearm During and in Relation to, and in Furtherance of, Crimes of Violence and Drug Trafficking Crimes; 18 U.S.C. § 924(o): Conspiracy to Possess, Use, and Carry a Firearm During and in Relation to, and in Furtherance of, a Crime of |
| Defendants. | |

Violence; 18 U.S.C. § 922(g)(1): Felon in Possession of Firearms and Ammunition; 18 U.S.C. § 2: Aiding and Abetting and Causing an Act to be Done; 18 U.S.C. § 1963, 21 U.S.C. § 853, 18 U.S.C. § 924(d): Criminal Forfeiture]

The Grand Jury charges:

GENERAL ALLEGATIONS

1.   The Mexican Mafia, also known as "La Eme," is a "gang of gangs" comprised mostly of senior members of southern California Hispanic street gangs who have come together to control and profit from the activities of Hispanic gangs operating in southern California.  La Eme was established in the 1950s by Hispanic youth inmates at the Duell Vocational Facility, but over the decades has morphed into an international criminal organization.  Today, there are approximately 140 full members of the Mexican Mafia, referred to as "carnales" or "brothers."  The majority of Mexican Mafia members are incarcerated in California prisons or jails or in federal prisons.  By exercising control over inmates in the prison and jail systems, primarily through violence and threats of violence, the Mexican Mafia is able to control the activities of southern California Hispanic criminal street gangs, both inside and outside custody facilities.  Mexican Mafia members and associates wield such power over the prison and jail populations that they are able to order that acts of violence be carried out not only against other prison or jail inmates, but also against street gang members and others outside of prison or jail.

2.   Members of the Mexican Mafia have divided control of, and the rights to criminal proceeds from, nearly all penal facilities in

California, including state prisons, county jail systems, and federal
detention facilities.  Similarly, members of the Mexican Mafia have
divided the rights to criminal proceeds from the activities of
southern California Hispanic criminal street gangs in various
southern California neighborhoods.

3.    Often, one member of the Mexican Mafia has control of and
rights to a specific facility.  That member, whether incarcerated in
that facility or not, will control the smuggling of drugs into the
facility, the collection of taxes from the sale of those drugs,
extortion within that facility (including the "kitty" and other fines
discussed below), and the maintenance of discipline within the
facility.  In some cases, different members of the Mexican Mafia may
control different parts of the same facility.

4.    Similarly, members of the Mexican Mafia have divided
control of and the rights to "taxes," or a share of criminal proceeds
from criminal activities including drug trafficking, from nearly all
Hispanic gangs in southern California.  Generally, one member of the
Mexican Mafia has control of and rights to a specific area; that
Mexican Mafia member will control the sale of drugs within that area,
the collection of taxes from that area, and the maintenance of
discipline over gang members from that area.

5.    The division of control of custody facilities and
neighborhoods is generally agreed upon by the members of the Mexican
Mafia, although there are occasionally disputes among members as to
the division.  Once a Mexican Mafia member acquires control of a
custody facility or neighborhood, he can generally operate that
custody facility or neighborhood without interference from other
members.  The Mexican Mafia member in control of a custody facility

3

1    or neighborhood will put together a team of trusted associates to

2    control the custody facility or neighborhood.

3         6.    The Mexican Mafia is split into two major subgroups,

4    "state" and "federal."  A Mexican Mafia member in state custody

5    generally can control state prisons, southern California jails, and

6    southern California neighborhoods, but generally not federal custody

7    facilities.  A Mexican Mafia member in federal custody generally can

8    control federal custody facilities anywhere in the country, and

9    southern California neighborhoods, but usually cannot control a state

10   prison or a county jail.

11        7.    To become a Mexican Mafia member, a Hispanic gang member

12   generally must have a distinguished reputation for "putting in work"

13   on behalf of the Mexican Mafia, meaning the gang member has murdered

14   or assaulted enemies and rivals of Mexican Mafia members.

15   Prospective members are also expected to have provided financial

16   assistance to Mexican Mafia members, and to have followed the Mexican

17   Mafia rules that govern the streets or correctional institutions.

18        8.    Mexican Mafia members carry out their criminal activity

19   with the help of associates.  Some of these trusted associates act as

20   "shot-callers," that is, high-level associates who have been given

21   the authority to conduct affairs of the Mexican Mafia, such as

22   collecting extortion and drug money and enforcing discipline in their

23   particular areas of control.  A "facilitator" is the highest-level

24   shot-caller and works directly under the authority of the Mexican

25   Mafia member who appointed him.  The facilitator coordinates the

26   activities of the other shot-callers and is responsible for ensuring

27   that other shot-callers carry out the Mexican Mafia member's orders

28

1   in their area of responsibility, whether in a neighborhood or a

2   custody facility.

3       9.   Members of Hispanic street gangs in southern California are

4   referred to as "Sureños" and fall under the control of the Mexican

5   Mafia.  "Sureños" may also be referred to as "Southsiders."

6   Additionally, the Mexican Mafia considers Mexican nationals, referred

7   to as "paisas," and Hispanic-American citizens who are not members of

8   a gang, generally referred to as "residents," to fall under the

9   Mexican Mafia's control while in a custody facility, and trusted

10  residents and paisas may participate in or be given shot-caller

11  positions in Mexican Mafia affairs.

12      10.   Members and associates of street gangs controlled by and/or

13  affiliated with the Mexican Mafia must pay "taxes" to members and

14  associates of the Mexican Mafia for permission to maintain control

15  over their territories in order to distribute drugs and engage in

16  other criminal activity.  This system of "taxation" amounts to

17  widespread extortion.  These "taxes" also ensure the protection of

18  the gang's members once they enter prisons or jails.  The "taxing"

19  and control applies to activities both in and out of jail or prison.

20  Indeed, a jail or prison, or a floor, yard, or other unit of a jail

21  or prison is considered by the Mexican Mafia to be territory just as

22  much as a neighborhood.

23      11.   Sureños, whether in a custody facility or in a

24  neighborhood, operate as soldiers or workers for the Mexican Mafia.

25  Indeed, being loyal to the Mexican Mafia is an integral part of being

26  a southern California Hispanic street gang member, and it is openly

27  understood that when individuals join such gangs that they are

28  joining an entity loyal to the Mexican Mafia.  Members of such gangs

are expected to, and are proud to, carry out the orders of the Mexican Mafia member in control of their neighborhood or custody facility, because doing work for the Mexican Mafia increases the gang member's status and reputation.  Some gangs proudly include in their name the number "13," denoting the letter M, or "eme" in Spanish, in order to demonstrate the gang's loyalty and allegiance to the Mexican Mafia.

COUNT ONE

[18 U.S.C. § 1962(d)]

[DEFENDANTS LERMA, S. GONZALEZ, C. GONZALEZ, SANCHEZ, J.V. GONZALEZ,

DESHANNON, AND DIAZ]

1.   Paragraphs 1 through 11 of the General Allegations of this First Superseding Indictment are re-alleged and incorporated by reference as if fully set forth herein.

A.   <u>THE RACKETEERING ENTERPRISE</u>

2.   At all times relevant to this First Superseding Indictment, defendants MICHAEL LERMA, also known as ("aka") "Pomona Mike," aka "Big Mike," SEFERINO GONZALEZ, aka "Spooky" ("S. GONZALEZ"), CARLOS GONZALEZ, aka "Popeye" ("C. GONZALEZ"), JUAN SANCHEZ, aka "Squeaks," JOSE VALENCIA GONZALEZ, aka "Swifty" ("J.V. GONZALEZ"), KELLY DESHANNON, and DANIEL DIAZ, aka "Bugsy," aka "Fam Bam," and others known and unknown to the Grand Jury, were members and associates of an organization engaged in, among other things, acts involving murder, kidnapping, robbery, extortion, trafficking in controlled substances, conspiracy and attempt to commit the foregoing acts, witness tampering, money laundering, and identity theft.  At all relevant times, this organization, known as the "Michael Lerma Cell of the Mexican Mafia," operated within the Central District of California and elsewhere.  The Michael Lerma Cell of the Mexican Mafia, including its leaders, members, and associates, constituted an "enterprise," as defined by Title 18, United States Code, Section 1961(4), that is, a group of individuals associated in fact, although not a legal entity, which engaged in, and the activities of which affected, interstate and foreign commerce.  The Michael Lerma Cell of the Mexican Mafia constituted an ongoing organization whose members

7

function as a continuing unit for a common purpose of achieving the objectives of the enterprise.

3.    The Michael Lerma Cell of the Mexican Mafia operates for the benefit of defendant LERMA and his associates.  The Michael Lerma Cell of the Mexican Mafia conducts its activities by enforcing the rules of the Mexican Mafia on areas within its control.  Using the methods of the Mexican Mafia, the Michael Lerma Cell of the Mexican Mafia carries out its goals of controlling drug trafficking activities and the distribution of drug trafficking proceeds, extortion, and the enforcement of Mexican Mafia rules (which are used as a basis for extortion), in areas within its control, both inside and outside of custody facilities.

4.    Pomona is a city in eastern Los Angeles County that is home to a number of predominantly Hispanic street gangs that are loyal to the Mexican Mafia.  At any time, one member of the Mexican Mafia may exercise control over the illegal activities conducted by predominantly Hispanic street gangs in and around the City of Pomona, or control of these illegal activities in and around the City of Pomona may be divided among different members of the Mexican Mafia. At all times relevant to this First Superseding Indictment, the Michael Lerma Cell of the Mexican Mafia claimed control of Pomona and surrounding areas and the profits from drug distribution and extortion activities in those areas.

5.    Calipatria State Prison is a California State Prison in Imperial County, California.  Control over Calipatria State Prison has been divided among members of the Mexican Mafia.  The Michael Lerma Cell of the Mexican Mafia claimed control of portions of Calipatria State Prison and the profits from drug distribution and

extortion activities in those areas at various times relevant to this First Superseding Indictment.

6.    California state prisons operate inmate trust accounts for their inmates.  These accounts are provided for inmates to use to purchase items such as food or hygiene products from the jail commissary.  Members outside of the prison can place money into an inmate's trust account.  At all times relevant to this First Superseding Indictment, the Michael Lerma Cell of the Mexican Mafia used inmate trust accounts to deposit proceeds from its criminal activities, for the benefit of defendant LERMA.

7.    The Metropolitan Detention Center, Los Angeles ("MDC-LA"), is a detention facility operated by the Federal Bureau of Prisons, primarily housing detainees awaiting trial or sentencing for federal criminal charges.  MDC-LA comprises land reserved or acquired for the use of the United States, and under the exclusive or concurrent jurisdiction thereof, and a place purchased or otherwise acquired by the United States by consent of the legislature of the State of California, for the erection of a needful building.

8.    The Michael Lerma Cell of the Mexican Mafia operates to carry out the goals and objectives of the Mexican Mafia in Pomona and in some surrounding neighborhoods, and, at times relevant to this First Superseding Indictment, in Calipatria State Prison and MDC-LA, including by directing and controlling drug trafficking activities and the distribution of drug trafficking proceeds, as well as the enforcement of Mexican Mafia rules both in and surrounding Pomona, Calipatria State Prison, and in MDC-LA.  More specifically:

a.    Members and associates of the Michael Lerma Cell of the Mexican Mafia in prisons or jails send instructions to local

street gangs and other Mexican Mafia members and associates, both inside and outside prison and jail, via telephone calls, prison system e-mails, letters, "kites" (which are notes smuggled by prisoners), "verbals" (passing a particularly sensitive message verbally from inmate to inmate), and by conveying messages through jail or prison visitors.  Members and associates of the Michael Lerma Cell of the Mexican Mafia generally use coded language in order to conceal the true nature of their discussions with and instructions to criminal associates.  In order to pass on instructions and information from prison and jail, members and associates of the Michael Lerma Cell of the Mexican Mafia generally rely on associates, often female, known as "secretaries," who communicate with incarcerated Mexican Mafia members and associates and relay their instructions to others.  In addition, attorneys who are willing to assist in the Mexican Mafia's criminal activities are utilized by the Mexican Mafia to pass messages concerning these activities and to facilitate communication among its members and associates.  These attorneys are particularly valued by members of the Mexican Mafia because they provide a means to shield criminal communications from law enforcement by providing the appearance of attorney-client privilege and a veneer of legitimacy to their criminal communications.  Both secretaries and attorneys are treated as respected criminal figures by members of street gangs controlled by and/or affiliated with the Mexican Mafia.

b.   The Michael Lerma Cell of the Mexican Mafia commonly extorts money from gang members and associates who violate enterprise and Mexican Mafia rules and from those who want to engage in profitable activities in areas controlled by the Michael Lerma Cell

of the Mexican Mafia.  If the gang member or associate does not pay the demanded sum, or has violated Mexican Mafia or enterprise rules, a Mexican Mafia leader commonly will order that the person be assaulted until that individual complies.  Alternatively, if the non-compliant individual refuses to pay, or if the enterprise is not able to punish the individual, the Michael Lerma Cell of the Mexican Mafia may extort or punish family members, close associates, members of that person's gang, or others related to the person.  If a person or gang does not meet the Michael Lerma Cell of the Mexican Mafia's payment demands, they will be subjected to violence until they comply, which may result in the murder of a targeted individual.

c.   One of the Michael Lerma Cell of the Mexican Mafia's most effective ways of making money is by controlling the sale of drugs.  On the streets, profiting from drug trafficking takes the form of "taxing" drug dealers.  All drug dealers in an area controlled by the Michael Lerma Cell of the Mexican Mafia must pay a percentage of their profits from the sale of drugs to the enterprise. If the drug dealer does not pay, he will not be allowed to sell drugs in that area under threat of assault or even death.  If the drug dealer does pay the tax, the drug dealer benefits by receiving protection from other dealers or robbers and gains assistance in collecting debts.

d.   Inside of custody facilities, the Michael Lerma Cell of the Mexican Mafia's taxing of drug trafficking is maintained by collecting a "thirds" tax on all other drugs that are smuggled into MDC-LA.  Pursuant to the thirds tax, one third of each shipment of drugs that is smuggled into the Los Angeles County Jail system must be "broken-off" and given to the Mexican Mafia member in control of

the facility or his trusted shot-caller or facilitator.  If the Mexican Mafia member decides to sell the "thirds-tax" portion of the drugs, they are sent to a dorm or module for sale with the proceeds going to the Mexican Mafia member, and others in the facility are not allowed to sell drugs until the Mexican Mafia member's thirds have been sold.

        e.   The Michael Lerma Cell of the Mexican Mafia also makes money by extorting or taxing gang members and other Hispanic inmates in prison through the "kitty."  In every yard of the California prison system, inmates are allowed to purchase items from the prison-operated store or commissary.  These items include candy bars, soup, ramen noodles, shower shoes, deodorant, baby powder, and other food and personal hygiene items.  In every prison yard or portion thereof controlled by the Michael Lerma Cell of the Mexican Mafia, every Hispanic gang member, paisa, or resident is required to contribute commissary items of a certain value (e.g., one dollar's worth of items) into the "kitty" for every set amount of items purchased (e.g., fifteen dollars' worth).  The Mexican Mafia member in control of the yard or portion thereof sets the contribution rates for the "kitty," and a shot-caller collects the commissary items and sells them to a person in the yard for a price that is also set by the Mexican Mafia member.  The payment for the "kitty" is made to a secretary or facilitator outside of the facility, who forwards it to the Mexican Mafia member who controls the portion of the facility that the "kitty" was collected from.

        f.   In addition, the Michael Lerma Cell of the Mexican Mafia may subject any person or inmate in a controlled neighborhood,

1   facility, or, module to extortion for any money-generating activity
2   he or she engages in while in the enterprise controlled territory.

3           g.   The Michael Lerma Cell of the Mexican Mafia has self-
4   imposed rules handed down by the Mexican Mafia.  These rules,
5   referred to as "reglas," are imposed to maintain fear and compliance
6   among Sureños or others falling under the authority of the Mexican
7   Mafia who are or who may become incarcerated in a jail or prison.
8   Because these rules provide a basis for being fined as well as
9   assaulted, they are a key part of the Michael Lerma Cell of the
10  Mexican Mafia's extortion scheme.  If a southern California Hispanic
11  gang member should break one of these rules, discipline is imposed by
12  a facilitator, shot-caller, or secretary of the Mexican Mafia member
13  in control of the facility.  Such discipline is frequently imposed in
14  the form of a fine or an assault, which commonly escalate in severity
15  until the individual targeted pays a required debt or otherwise
16  complies with the demands of the enterprise, is deemed to have been
17  sufficiently punished, or is "smashed out," meaning the offender is
18  assaulted so seriously or openly that he is moved out of the area
19  after the assault for his own safety by prison or jail personnel.
20  For example, the Michael Lerma Cell of the Mexican Mafia imposed a
21  system of discipline in MDC-LA involving consequences of increasing
22  severity, which may begin with a verbal warning or a physical
23  beating, followed by a stabbing, followed by a stabbing serious
24  enough to result in a "smash out" or death.

25          h.   One of the most important rules for which discipline
26  may be imposed by the Michael Lerma Cell of the Mexican Mafia is a
27  prohibition on cooperating with law enforcement.

28

1          i.    The most serious form of discipline is being put on

2    the "green light list" or being "greenlighted."  Being placed on the

3    green light list means that every Sureño is obligated to severely

4    assault the person, even if death is likely to result.  This applies

5    both inside and outside of custody facilities.  Only true/full

6    members of the Mexican Mafia can put a person, group, or entire gang

7    on the green light list.  Those who are put on a green light list can

8    be removed by the payment of a hefty fine.

9    B.   <u>PURPOSES OF THE ENTERPRISE</u>

10          9.    The purposes of the Michael Lerma Cell of the Mexican Mafia

11   include, but are not limited to, the following:

12          a.    Enriching members and associates of the Michael Lerma

13   Cell of the Mexican Mafia through, among other things, the control of

14   and participation in the distribution of controlled substances in and

15   around the City of Pomona, and extortion of others engaged in the

16   distribution of controlled substances and other crimes in and around

17   the City of Pomona, in portions of Calipatria State Prison, and in

18   MDC-LA.

19          b.    Enriching members by engaging in and taxing other

20   illegal activities, including identity theft and fraud, in and around

21   the City of Pomona.

22          c.    Maintaining the control and authority of the Michael

23   Lerma Cell of the Mexican Mafia in and around Pomona, in portions of

24   Calipatria State Prison, and in MDC-LA, often through threats,

25   intimidation, and acts of violence against persons involved in drug

26   dealing and other crimes, rival gang members, those deemed to have

27   violated rules of the enterprise, witnesses to their criminality, and

28   local residents.

1        d.    Promoting and enhancing the Michael Lerma Cell of the

2 Mexican Mafia's members and associates and their activities.

3        e.    Punishing Mexican Mafia members and associates who do

4 not comply with the rules and orders of the Mexican Mafia, including

5 those who cooperate with law enforcement.

6 C.   <u>THE MEANS AND METHODS OF THE ENTERPRISE</u>

7    10.  The means and methods by which the defendants and their

8 associates conduct and participate in the conduct of the affairs of

9 the Michael Lerma Cell of the Mexican Mafia include the following:

10        a.    Engaging in drug trafficking in and around the City of

11 Pomona, in portions of Calipatria State Prison, and in MDC-LA, as a

12 means to generate income.

13        b.    Engaging in extortion as a means to generate income.

14        c.    Working together to collect a portion of the proceeds

15 of drug trafficking conducted by street gang members and others in

16 and around the City of Pomona, in portions of Calipatria State

17 Prison, and in MDC-LA.

18        d.    Working together to commit robbery.

19        e.    Working together to commit identify theft and fraud.

20        f.    Committing, attempting to commit, and threatening to

21 commit acts of violence to protect and expand the enterprise's

22 criminal operation, including kidnapping, assaults, murders, acts of

23 intimidation, and threats of violence directed against rival gang

24 members, witnesses to the Michael Lerma Cell of the Mexican Mafia's

25 criminal conduct, and Mexican Mafia members and associates who do not

26 follow the rules and orders of the enterprise and the Mexican Mafia

27 in general.

28

g.    Promoting a climate of fear, particularly among rival gang members, potential witnesses to the gang's criminal conduct, and Hispanic gang members, paisas, residents, or others who may cooperate with law enforcement, through acts of violence and threats to commit acts of violence.

h.    Engaging in the aforementioned criminal activity in the presence of other members and associates of the Michael Lerma Cell of the Mexican Mafia for mutual protection and in order to enhance the status of those affirmatively conducting the criminal acts, and committing the aforementioned criminal activity for the purpose of earning the respect of the members of the Michael Lerma Cell of the Mexican Mafia in the hope of achieving higher status.

i.    In the case of more senior members of the Michael Lerma Cell of the Mexican Mafia, and their designated assistants, including secretaries, shot-callers, and facilitators, providing instructions to junior members and associates regarding the distribution of controlled substances, the collection of proceeds from the sale of controlled substances and proceeds from extortion, the taxing of drug dealers, the direction of identity theft and fraud, the commission of acts of violence, and providing verification that such crimes have occurred.

j.    In the case of more junior members and associates of the Michael Lerma Cell of the Mexican Mafia, engaging in the distribution of controlled substances, the collection of proceeds from the sale of controlled substances and proceeds from extortion, the taxing of drug dealers, identity theft and fraud, and the commission of acts of violence and providing verification that such crimes have occurred.

1  D.    OBJECT OF THE CONSPIRACY

2       11.  Beginning on a date unknown, and continuing to the date of

3  this First Superseding Indictment, in Los Angeles and San Bernardino

4  Counties, within the Central District of California, and elsewhere,

5  defendants LERMA, S. GONZALEZ, C. GONZALEZ, SANCHEZ, J.V. GONZALEZ,

6  DESHANNON, and DIAZ, and others known and unknown to the Grand Jury,

7  being persons employed by and associated with the Michael Lerma Cell

8  of the Mexican Mafia, an enterprise which was engaged in, and the

9  activities of which affected, interstate and foreign commerce,

10  knowingly and intentionally conspired to violate Title 18, United

11  States Code, Section 1962(c), that is, to conduct and participate,

12  directly and indirectly, in the conduct of the affairs of that

13  enterprise through a pattern of racketeering activity, as that term

14  is defined in Title 18, United States Code, Sections 1961(1) and

15  1961(5), consisting of:

16       multiple acts involving:

17            a.   Murder, in violation of California Penal Code Sections

18  21a, 31, 182, 187, 189, and 664;

19            b.   Kidnapping, in violation of California Penal Code

20  Sections 21a, 31, 182, 207, 209, and 664;

21            c.   Robbery, in violation of California Penal Code

22  Sections 21a, 31, 182, 211, 212, 212.5, 213, 215, and 664;

23            d.   Extortion, in violation of California Penal Code

24  Sections 21a, 31, 182, 518, 519, 524, and 664;

25       multiple offenses involving:

26            e.   the distribution of, possession with intent to

27  distribute, and conspiracy to distribute and possess with intent to

28  distribute controlled substances, including methamphetamine, and

1  heroin, in violation of Title 21, United States Code, Sections

2  841(a)(1) and 846;

3      and multiple acts indictable under the following provisions of

4  federal law:

5          f.   Title 18, United States Code, Sections 1956 and 1957,

6  Money Laundering;

7          g.   Title 18, United States Code, Section 1512, Tampering

8  with a Witness, Victim, or an Informant;

9          h.   Title 18, United States Code, Section 1028, Identity

10  Fraud; and

11          i.   Title 18, United States Code, Section 1029, Access

12  Device Fraud.

13      12.  It was a further part of the conspiracy that each defendant

14  agreed that a conspirator would commit at least two acts of

15  racketeering in the conduct of the affairs of the enterprise.

16  E.   MEANS BY WHICH THE OBJECT OF THE CONSPIRACY WAS TO BE

17       ACCOMPLISHED

18      13.  The object of the conspiracy was to be accomplished, in

19  substance, as follows:

20          a.   Defendant LERMA, as a full member of the Mexican

21  Mafia, would have the right to control and collect criminal proceeds

22  from certain neighborhoods or correctional facilities throughout the

23  Central District of California and elsewhere, including in and around

24  the City of Pomona, in Calipatria State Prison, and in MDC-LA.

25  Defendant LERMA would control Pomona during all times relevant to

26  this First Superseding Indictment, and would control portions of

27  Calipatria State Prison, MDC-LA, and other correctional facilities at

28  various times.

1        b.   Co-conspirators Cheryl Perez-Castaneda ("Perez-

2 Castaneda") and Inez Perez ("I. Perez") would be appointed as top-

3 level associates, known as "Senoras," of defendant LERMA and would

4 act with the authority of defendant LERMA.

5        c.   Co-conspirators Perez-Castaneda and I. Perez would

6 work for and carry out the orders of defendant LERMA in Pomona.

7        d.   Co-conspirator Perez-Castaneda would coordinate the

8 collection of taxes from portions of Calipatria State Prison on

9 behalf of defendant LERMA.

10        e.   Co-conspirators Perez-Castaneda and Trisha Perez

11 ("T. Perez")  would forward proceeds to defendant LERMA's prison

12 account.

13        f.   Defendant S. GONZALEZ would carry out the orders of

14 defendant LERMA and co-conspirator Perez-Castaneda in Pomona.

15        g.   Defendants S. GONZALEZ, C. GONZALEZ, SANCHEZ,

16 J.V. GONZALEZ, and DESHANNON, co-conspirators Perez-Castaneda, Jose

17 Martinez ("Martinez"), and T. Perez, and unindicted co-conspirator

18 one ("UICC-1") would engage in acts of violence in furtherance of the

19 Michael Lerma Cell of the Mexican Mafia.

20        h.   Defendants S. GONZALEZ, and DIAZ, and co-conspirator

21 Perez-Castaneda would direct others to collect taxes in Pomona on

22 behalf of the Michael Lerma Cell of the Mexican Mafia.

23        i.   Defendants C. GONZALEZ, J.V. GONZALEZ, and DIAZ, and

24 co-conspirators I. Perez, Martinez, and Victor Inclan ("Inclan")

25 would collect taxes in Pomona on behalf of the Michael Lerma Cell of

26 the Mexican Mafia.

27        j.   Unindicted co-conspirator two ("UICC-2") would collect

28 proceeds from Calipatria State Prison.

1          k.   Unindicted co-conspirator three ("UICC-3"), as a full

2    member of the Mexican Mafia, would give additional Mexican Mafia

3    sanction to the activities of the Michael Lerma Cell of the Mexican

4    Mafia.

5          l.   Defendants C. GONZALEZ, SANCHEZ, and J.V. GONZALEZ

6    would carry out the orders of defendant LERMA in MDC-LA, including

7    collecting the proceeds of criminal activity in MDC-LA and committing

8    acts of violence in furtherance of the Michael Lerma Cell of the

9    Mexican Mafia in order to maintain discipline for violations of

10   enterprise rules or to collect debts.

11   F.   <u>OVERT ACTS</u>

12      14.  In furtherance of the conspiracy and to accomplish its

13   object, on or about the following dates, defendants LERMA,

14   S. GONZALEZ, C. GONZALEZ, SANCHEZ, J.V. GONZALEZ, DESHANNON, and

15   DIAZ, and others known and unknown to the Grand Jury, committed

16   various overt acts within the Central District of California, and

17   elsewhere, including, but not limited to, the following:

18   <u>Forwarding of Proceeds to Defendant LERMA</u>

19      <u>Overt Act No. 1:</u>  On February 8, 2012, at defendant LERMA's

20   direction, co-conspirator Perez-Castaneda deposited $120 into the

21   inmate trust account of defendant LERMA at Pelican Bay State Prison.

22      <u>Overt Act No. 2:</u>  On September 11, 2012, at defendant LERMA's

23   direction, co-conspirator Perez-Castaneda deposited $100 into the

24   inmate trust account of defendant LERMA at Pelican Bay State Prison.

25   <u>Collection and Laundering of Proceeds from Calipatria State Prison</u>

26      <u>Overt Act No. 3:</u>  On January 25, 2013, in a recorded text

27   message, co-conspirator Perez-Castaneda directed UICC-2 to send a

28   Green Dot card number representing proceeds of activities, including

1  extortion, of the Michael Lerma Cell of the Mexican Mafia from

2  Calipatria State Prison to co-conspirator Perez-Castaneda.

3      Overt Act No. 4:   On January 25, 2013, in a recorded text

4  message, UICC-2 sent a Green Dot card number representing proceeds

5  from activities, including extortion, of the Michael Lerma Cell of

6  the Mexican Mafia from Calipatria State Prison to co-conspirator

7  Perez-Castaneda.

8      Overt Act No. 5:   On January 27, 2013, in a recorded text

9  message, co-conspirator Perez-Castaneda directed UICC-2 to send a

10  Green Dot card number representing proceeds from activities,

11  including extortion, of the Michael Lerma Cell of the Mexican Mafia

12  from Calipatria State Prison to co-conspirator Perez-Castaneda.

13      Overt Act No. 6:   On January 27, 2013, in a recorded text

14  message, UICC-2 sent a Green Dot card number representing proceeds

15  from activities, including extortion, from Calipatria State Prison to

16  co-conspirator Perez-Castaneda.

17      Overt Act No. 7:   On January 30, 2013, in a recorded telephone

18  call, co-conspirator Perez-Castaneda directed UICC-2 to send Green

19  Dot card numbers representing proceeds from activities, including

20  extortion, of the Michael Lerma Cell of the Mexican Mafia from

21  Calipatria State Prison to co-conspirator Perez-Castaneda.

22      Overt Act No. 8:   On January 30, 2013, in a recorded text

23  message, UICC-2 sent Green Dot card numbers representing proceeds

24  from activities, including extortion, of the Michael Lerma Cell of

25  the Mexican Mafia from Calipatria State Prison to co-conspirator

26  Perez-Castaneda.

27      Overt Act No. 9:   On February 2, 2013, in a recorded text

28  message, UICC-2 sent Green Dot card numbers representing proceeds

from activities, including extortion, of the Michael Lerma Cell of the Mexican Mafia from Calipatria State Prison to co-conspirator Perez-Castaneda.

Overt Act No. 10:   On February 4, 2013, in a recorded text message, UICC-2 sent Green Dot card numbers representing proceeds from activities, including extortion, of the Michael Lerma Cell of the Mexican Mafia from Calipatria State Prison to co-conspirator Perez-Castaneda.

Conspiracy to Assault or Murder S.L.

Overt Act No. 11:   Between March 24, 2013, and July 1, 2013, co-conspirator Perez-Castaneda asked for defendant LERMA's permission to assault or murder S.L. for shooting co-conspirator Perez-Castaneda's son in front of co-conspirator Perez-Castaneda's home in Pomona.

Overt Act No. 12:   From July 1, 2013, through July 27, 2013, in recorded telephone conversations, defendant S. GONZALEZ and co-conspirator Perez-Castaneda discussed finding S.L. within Los Angeles County Jail in order to have him stabbed.

Overt Act No. 13:   On or before July 15, 2013, UICC-3 gave his approval for the assault or murder of S.L.

Overt Act No. 14:   On July 15, 2013, in a recorded telephone conversation, co-conspirator Perez-Castaneda told defendant S. GONZALEZ that she ordered the assault or murder of S.L., that her order was under defendant LERMA'S authority, and that UICC-3 approved of the order.

Overt Act No. 15:   On July 27, 2013, unknown co-conspirators assaulted S.L. in the Los Angeles County Jail ("LACJ") on the orders of defendant S. GONZALEZ and co-conspirator Perez-Castaneda.

1    <u>Overt Act No. 16:</u>   On July 28, 2013, defendant S. GONZALEZ

2    informed co-conspirator Perez-Castaneda that S.L. had been assaulted

3    in LACJ.

4    <u>Overt Act No. 17:</u>   On August 24, 2013, in a coded letter,

5    defendant LERMA gave his approval for the assault or murder of S.L.

6    <u>Overt Act No. 18:</u>   On February 14, 2014, UICC-1 requested that

7    an associate, who was in fact a confidential informant working for

8    law enforcement (the "CI"), find S.L. in LACJ so that S.L. could be

9    assaulted or murdered for falsely claiming that UICC-3 had approved

10   of the shooting of co-conspirator Perez-Castaneda's son.

11   <u>Overt Act No. 19:</u>   On February 28, 2014, UICC-1 told the CI

12   that he wanted S.L. to be stabbed for falsely claiming to have UICC-

13   3's blessing for shooting co-conspirator Perez-Castaneda's son.

14   <u>Taxation of Pomona-Area Criminal Activity</u>

15   <u>Overt Act No. 20:</u>   From at least February 8, 2012, to the

16   present, defendant LERMA controlled the taxing of drug dealers in and

17   around the City of Pomona and directed co-conspirator Perez-Castaneda

18   and Martinez and others to collect those taxes.

19   <u>Overt Act No. 21:</u>   In July and August 2013, co-conspirator

20   Perez-Castaneda directed the taxing of drug dealers in and around

21   Pomona on behalf of defendant LERMA.

22   <u>Overt Act No. 22:</u>   On July 12, 2013, in a recorded telephone

23   conversation, defendants S. GONZALEZ and J.V. GONZALEZ discussed the

24   following: taxing the proceeds from the sale of methamphetamine by a

25   unindicted co-conspirator four ("UICC-4") in areas controlled by

26   defendant LERMA; the amount that UICC-4 had paid in taxes; and that

27   UICC-4 complained that the amount of taxes was too high.

28

1    <u>Overt Act No. 23:</u>   On July 14, 2013, in a recorded telephone

2    conversation, defendants S. GONZALEZ and J.V. GONZALEZ discussed the

3    following: taxing a drug selling location known as "The Compound";

4    that defendant LERMA only wanted proceeds from the sale of heroin;

5    that defendant J.V. GONZALEZ had taxed UICC-4's proceeds from the

6    sale of methamphetamine in areas controlled by defendant LERMA; that

7    defendants S. GONZALEZ and J.V. GONZALEZ would keep the proceeds from

8    the taxing of the sale of methamphetamine; and that co-conspirator

9    Perez-Castaneda would begin supplying heroin for The Compound.

10   <u>Overt Act No. 24:</u>   On July 21, 2013, in a recorded telephone

11   conversation, co-conspirator Perez-Castaneda told defendant

12   S. GONZALEZ that she approved of the taxation of The Compound.

13   <u>Overt Act No. 25:</u>   In July and August 2013, co-conspirator

14   Perez-Castaneda directed co-conspirator Martinez to collect taxes

15   from drug dealers in south Pomona.

16   <u>Overt Act No. 26:</u>   In July and August 2013, co-conspirator

17   Martinez collected taxes from drug dealers in south Pomona.

18   <u>Overt Act No. 27:</u>   On August 4, 2013, co-conspirator Martinez

19   possessed a .32 caliber handgun to protect himself while collecting

20   taxes from drug dealers in south Pomona.

21   <u>Possession of Drugs</u>

22   <u>Overt Act No. 28:</u>   On August 4, 2013, co-conspirator Martinez

23   possessed approximately 11.2 grams of methamphetamine for further

24   distribution in and around Pomona.

25   <u>Overt Act No. 29:</u>   On December 2, 2013, in an area controlled

26   by defendant LERMA in Pomona, UICC-4 possessed for purposes of sale

27   approximately 128.9 grams of methamphetamine and 8.6 grams of heroin.

28

Attempted Robbery, Extortion, and Carjacking

    Overt Act No. 30:   Beginning prior to July 12, 2013, defendant S. GONZALEZ demanded a Mercedes automobile from then-LACJ inmate W.M.

    Overt Act No. 31:   On or before July 12, 2013, defendant S. GONZALEZ directed defendant DESHANNON to take a Mercedes automobile belonging to W.M. that was in the custody of E.N.

    Overt Act No. 32:   On July 12, 2013, defendant DESHANNON attempted to take W.M.'s Mercedes automobile from E.N., to whom W.M. had entrusted the automobile.

    Overt Act No. 33:   Between July 12, 2013, and July 14, 2013, upon defendant DESHANNON's failure to obtain W.M.'s automobile, defendant S. GONZALEZ directed co-conspirator Perez-Castaneda to gather more people to take the automobile.

    Overt Act No. 34:   On July 14, 2013, defendants DESHANNON and J.V. GONZALEZ, and co-conspirators Perez-Castaneda and T. Perez, went to the home of E.N. to take the Mercedes automobile by force or fear.

    Overt Act No. 35:   On July 14, 2013, co-conspirator Perez-Castaneda assaulted E.N. in order to take the Mercedes automobile.

    Overt Act No. 36:   On July 14, 2013, defendant J.V. GONZALEZ shot M.A. when E.N. and M.A. resisted efforts to take the Mercedes automobile.

    Overt Act No. 37:   On July 14, 2013, in a recorded telephone call, defendants DESHANNON and J.V. GONZALEZ, and co-conspirators Perez-Castaneda and T. Perez, reported to defendant S. GONZALEZ that they had attempted to take the Mercedes automobile and had shot M.A.

Possession of a Firearm

    Overt Act No. 38:   From no later than October 17, 2013, through October 28, 2013, defendant C. GONZALEZ possessed a Walther Model PPK

.380 caliber semi-automatic pistol bearing serial number 060360, seven rounds of Winchester .380 caliber ammunition, and one round of CCI/Speer .380 caliber ammunition in his residence in Pomona.

Forwarding of Proceeds to Defendant LERMA

Overt Act No. 39:   On October 14, 2014, co-conspirator T. Perez deposited $150 into the inmate trust account of defendant LERMA at Pelican Bay State Prison.

Overt Act No. 40:   On December 24, 2014, co-conspirator T. Perez deposited $200 into the inmate trust account of defendant LERMA at Pelican Bay State Prison.

Kidnapping, Extortion, and Planned Murder of C.V.

Overt Act No. 41:   Prior to April 19, 2015, defendants C. GONZALEZ and SANCHEZ, and unindicted co-conspirators five ("UICC-5") and six ("UICC-6"), engaged in check fraud, identity theft, counterfeiting, and other crimes, and co-conspirator Perez-Castaneda taxed these criminal activities.

Overt Act No. 42:   Between April 19, 2015, and April 24, 2015, UICC-5 restrained C.V. against her will at his residence in Claremont and took C.V.'s possessions, including her recreational vehicle, identification, money, and other items.

Overt Act No. 43:   On May 4, 2015, defendant C. GONZALEZ forced C.V. to post $500 bail for UICC-6.

Overt Act No. 44:   On May 5, 2015, defendant C. GONZALEZ ordered that C.V. be moved from UICC-5's residence in Claremont to the residence of unindicted co-conspirator seven ("UICC-7") in Temple City.

1       <u>Overt Act No. 45:</u>   From May 5, 2015, through May 8, 2015,

2   defendant C. GONZALEZ directed that UICC-7 hold C.V. against her will

3   and visited UICC-7's residence to ensure that C.V. was being held.

4       <u>Overt Act No. 46:</u>   From May 5, 2015, through May 8, 2015, UICC-

5   7 held C.V. against her will at defendant C. GONZALEZ's direction.

6       <u>Overt Act No. 47:</u>   On May 8, 2015, defendant C. GONZALEZ met

7   co-conspirator Perez-Castaneda and other unindicted co-conspirators

8   in a bedroom of UICC-7's residence to discuss the extortion and

9   murder of C.V.

10      <u>Overt Act No. 48:</u>   On May 8, 2015, during the meeting, co-

11  conspirator Perez-Castaneda ordered defendant C. GONZALEZ and UICC-7

12  to take C.V. to retrieve the bail money for UICC-6, ordered that

13  defendant C. GONZALEZ give co-conspirator Perez-Castaneda that money,

14  and authorized the murder of C.V.

15      <u>Overt Act No. 49:</u>   On May 8, 2015, during the meeting,

16  defendant C. GONZALEZ stated his intention to murder C.V.

17      <u>Overt Act No. 50:</u>   On May 8, 2015, after leaving the meeting at

18  UICC-7's residence, defendant C. GONZALEZ ordered UICC-7 to bring

19  C.V. to his residence so that they could collect the bail money and

20  kill C.V.

21      <u>Overt Act No. 51:</u>   On May 8, 2015, C.V. was driven to defendant

22  C. GONZALEZ's residence in Pomona.

23      <u>Overt Act No. 52:</u>   On May 8, 2015, defendant C. GONZALEZ

24  brought a firearm and handcuffs into the vehicle in which C.V. was a

25  passenger and handcuffed C.V.

26      <u>Overt Act No. 53:</u>   On May 8, 2015, defendant SANCHEZ brought a

27  firearm and a backpack containing C.V.'s belongings into the vehicle

28  in which C.V. was a passenger.

Tax Collection and Possession of a Firearm

Overt Act No. 54:   Beginning on July 23, 2013, and continuing through June 18, 2015, co-conspirator Martinez collected taxes in the City of Pomona for defendant LERMA and co-conspirator Perez-Castaneda.

Overt Act No. 55:   On June 18, 2015, co-conspirator Martinez, while in a vehicle in the City of Pomona, possessed a Ruger model P85 MKII 9mm caliber semi-automatic pistol, bearing a partially obliterated serial number.

Possession of Drugs

Overt Act No. 56:   On June 18, 2015, while in a vehicle in the City of Pomona, co-conspirator Martinez and unindicted co-conspirators possessed approximately three grams of methamphetamine with intent to further distribute.

Forwarding of Proceeds to Defendant LERMA

Overt Act No. 57:   On June 14, 2015, co-conspirator T. Perez deposited $100 into the inmate trust account of defendant LERMA at Pelican Bay State Prison.

Overt Act No. 58:   On August 26, 2015, co-conspirator T. Perez deposited $100 into the inmate trust account of defendant LERMA at Pelican Bay State Prison.

Tax Collection

Overt Act No. 59:   On February 19, 2016, defendant DIAZ collected taxes in Pomona.

Overt Act No. 60:   On March 1, 2016, during a recorded telephone conversation, defendant DIAZ asked co-conspirator I. Perez to collect taxes from drug dealers in Pomona known as "Adrian," "Travis," and "TP."

1     <u>Overt Act No. 61:</u>   On March 2, 2016, in a recorded telephone
2 conversation, defendant DIAZ asked co-conspirator I. Perez to ask
3 defendant LERMA whether defendant DIAZ would continue to be defendant
4 LERMA'S shot-caller for Pomona after defendant DIAZ's release from
5 jail.

6     <u>Overt Act No. 62:</u>   On March 3, 2016, during a recorded
7 telephone conversation, defendant DIAZ asked co-conspirator Inclan to
8 collect taxes from drug dealers in Pomona known as "Adrian,"
9 "Travis," and "TP," to give those taxes to co-conspirator I. Perez,
10 and to increase the taxes if the drug dealers don't pay within three
11 days.

12     <u>Overt Act No. 63:</u>   On March 3, 2016, during a recorded
13 telephone conversation, defendant DIAZ asked co-conspirator Inclan to
14 obtain defendant LERMA's prison cell phone number.

15     <u>Overt Act No. 64:</u>   On March 9, 2016, co-conspirator Inclan,
16 collected $75 in taxes from a Pomona drug dealer known as "Travis."

17     <u>Overt Act No. 65:</u>   On March 9, 2016, co-conspirator I. Perez
18 put $50 from the taxing of "Travis" onto the inmate trust account of
19 defendant DIAZ.

20     <u>Overt Act No. 66:</u>   On March 13, 2016, co-conspirator Inclan
21 collected $50 in taxes from a Pomona drug dealer known as "Travis."
22 <u>Possession of a Firearm and Heroin</u>

23     <u>Overt Act No. 67:</u>   On July 1, 2016, defendant DIAZ possessed a
24 Smith & Wesson model SW9VW 9mm caliber semi-automatic pistol, bearing
25 serial number DUM0731, and approximately 7.49 grams of heroin for
26 purposes of distribution.
27 ///
28

1    Takeover of Metropolitan Detention Center

2        Overt Act No. 68:    In or around July 2018, after being

3    transferred to inmate housing at MDC-LA, defendant LERMA claimed

4    control over the MDC-LA facility, at times sharing control of

5    portions of MDC-LA with other Mexican Mafia members housed in the

6    facility, and defendants J.V. GONZALEZ, SANCHEZ, and C. GONZALEZ

7    assisted defendant LERMA.

8    Murder of S.B.

9        Overt Act No. 69:    On or before June 28, 2020, defendant LERMA

10   directed defendants J.V. GONZALEZ, SANCHEZ, and C. GONZALEZ to kill

11   S.B., in retaliation for S.B. failing to pay drug debts deemed owed

12   to the Michael Lerma Cell of the Mexican Mafia.

13       Overt Act No. 70:    On or about June 28, 2020, defendants

14   J.V. GONZALEZ, SANCHEZ, and C. GONZALEZ entered S.B.'s cell at MDC-LA

15   and killed S.B., at the direction of defendant LERMA.

16   G.    SPECIAL SENTENCING ALLEGATIONS

17       15.  Beginning no later than on or about April 19, 2015, and

18   continuing to on or about May 8, 2015, in Los Angeles and San

19   Bernardino Counties, within the Central District of California,

20   defendants C. GONZALEZ and SANCHEZ conspired to intentionally kill

21   C.V. with malice aforethought, in violation of California Penal Code

22   Sections 182, 187, and 189.

23       16.  Beginning no later than on or about April 19, 2015, and

24   continuing to on or about May 8, 2015, in Los Angeles and San

25   Bernardino Counties, within the Central District of California,

26   defendants C. GONZALEZ and SANCHEZ, aiding and abetting each other,

27   kidnapped C.V., that is, seized, confined, abducted, concealed, and

28   carried away, with intent to hold and detain C.V., and held and

detained C.V. to commit extortion, in violation of California Penal Code Sections 31 and 209.

17.  On or about June 28, 2020, in Los Angeles County, within the Central District of California, defendants LERMA, C. GONZALEZ, SANCHEZ, and J.V. GONZALEZ, each aiding, abetting, advising, and encouraging the others, willfully, deliberately, and with premeditation and malice aforethought, unlawfully murdered S.B., in violation of California Penal Code Sections 31, 187, 189, and 190.

18.  Beginning on an unknown date and continuing to on or about June 28, 2020, in Los Angeles County, within the Central District of California, defendants LERMA, C. GONZALEZ, SANCHEZ, and J.V. GONZALEZ conspired to intentionally kill S.B. with malice aforethought, in violation of California Penal Code Sections 182, 187, and 189.

COUNT TWO

[18 U.S.C. §§ 1959(a)(3), 2]

[DEFENDANTS SEFERINO GONZALEZ, J.V. GONZALEZ, AND DESHANNON]

1.    Paragraphs 1 through 11 of the General Allegations of this First Superseding Indictment and paragraphs 2 through 9 of Count One of this First Superseding Indictment are re-alleged and incorporated here.

2.    At all times relevant to this First Superseding Indictment, the Michael Lerma Cell of the Mexican Mafia, including its leaders, members, and associates, constituted an enterprise, as that term is defined in Title 18, United States Code, Section 1959(b)(2), that is, a group of individuals associated in fact, which was engaged in, and the activities of which affected, interstate and foreign commerce. The enterprise constituted an ongoing organization whose members functioned as a continuing unit for a common purpose of achieving the objectives of the enterprise.

3.    At all times relevant to this First Superseding Indictment, the Michael Lerma Cell of the Mexican Mafia, through its members and associates, engaged in racketeering activity, as defined in Title 18, United States Code, Sections 1959(b)(1), and 1961(1), consisting of: multiple acts involving:

        a.    Murder, in violation of California Penal Code Sections 21a, 31, 182, 187, 189, and 664;

        b.    Kidnapping, in violation of California Penal Code Sections 21a, 31, 182, 207, 209, and 664;

        c.    Robbery, in violation of California Penal Code Sections 21a, 31, 182, 211, 212, 212.5, 213, 215, and 664;

    d.   Extortion, in violation of California Penal Code
Sections 21a, 31, 182, 518, 519, 524, and 664;

multiple offenses involving:

    e.   the distribution of, possession with intent to
distribute, and conspiracy to distribute and possess with intent to
distribute controlled substances, including methamphetamine and
heroin, in violation of Title 21, United States Code, Sections
841(a)(1) and 846;

and multiple acts indictable under the following provisions of
federal law:

    f.   Title 18, United States Code, Sections 1956 and 1957,
Money Laundering;

    g.   Title 18, United States Code, Section 1512, Tampering
with a Witness, Victim, or an Informant;

    h.   Title 18, United States Code, Section 1028, Identity
Fraud; and

    i.   Title 18, United States Code, Section 1029, Access
Device Fraud.

    4.   On or about July 14, 2013, in Los Angeles County, within
the Central District of California, for the purpose of maintaining
and increasing position in the Michael Lerma Cell of the Mexican
Mafia, an enterprise engaged in racketeering activity, defendants
JOSE VALENCIA GONZALEZ, also known as ("aka") "Swifty," SEFERINO
GONZALEZ, aka "Spooky," and KELLY DESHANNON, and others known and
unknown to the Grand Jury, aiding and abetting each other, unlawfully
and knowingly assaulted M.A. with a dangerous weapon, that is, a
firearm, resulting in serious bodily injury in violation of
California Penal Code Sections 31, 245(a)(2), and (4).

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

COUNT THREE

[18 U.S.C. § 1959(a)(6)]

[DEFENDANTS SEFERINO GONZALEZ, J.V. GONZALEZ, AND DESHANNON]

1.    Paragraphs 1 through 11 of the General Allegations of this First Superseding Indictment, paragraphs 2 through 9 of Count One of this First Superseding Indictment, and Paragraphs 2 and 3 of Count Two of this First Superseding Indictment are re-alleged and incorporated here.

2.    From prior to July 12, 2013, through on or about July 14, 2013, in Los Angeles County, within the Central District of California, for the purpose of maintaining and increasing position in the Michael Lerma Cell of the Mexican Mafia, an enterprise engaged in racketeering activity, defendants JOSE VALENCIA GONZALEZ, also known as ("aka") "Swifty," SEFERINO GONZALEZ, aka "Spooky," and KELLY DESHANNON, and others known and unknown to the Grand Jury, unlawfully and knowingly conspired to assault M.A. with a dangerous weapon, that is, a firearm, and to commit assault resulting in serious bodily injury, in violation of California Penal Code Sections 182, 245(a)(2), and (4).

COUNT FOUR

[18 U.S.C. § 1959(a)(5)]

[DEFENDANTS C. GONZALEZ AND SANCHEZ]

1.    Paragraphs 1 through 11 of the General Allegations of this First Superseding Indictment, paragraphs 2 through 9 of Count One of this First Superseding Indictment, and Paragraphs 2 and 3 of Count Two of this First Superseding Indictment are re-alleged and incorporated here.

2.    From on or about April 19, 2015, to on or about May 8, 2015, in Los Angeles and San Bernardino Counties, within the Central District of California, for the purpose of maintaining and increasing position in the Michael Lerma Cell of the Mexican Mafia, an enterprise engaged in racketeering activity, defendants CARLOS GONZALEZ, also known as ("aka") "Popeye," and JUAN SANCHEZ, aka "Squeaks," and others known and unknown to the Grand Jury, unlawfully and knowingly conspired to kidnap C.V., in violation of California Penal Code Sections 182, 207, and 209.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

COUNT FIVE

[18 U.S.C. §§ 1959(a)(1), 2]

[DEFENDANTS C. GONZALEZ AND SANCHEZ]

1.    Paragraphs 1 through 11 of the General Allegations of this First Superseding Indictment, paragraphs 2 through 9 of Count One of this First Superseding Indictment, and Paragraphs 2 and 3 of Count Two of this First Superseding Indictment are re-alleged and incorporated by reference here.

2.    Between on or about April 19, 2015, to on or about May 8, 2015, in Los Angeles and San Bernardino Counties, within the Central District of California, for the purpose of maintaining and increasing position in the Michael Lerma Cell of the Mexican Mafia, an enterprise engaged in racketeering activity, defendants CARLOS GONZALEZ, also known as ("aka") "Popeye," and JUAN SANCHEZ, aka "Squeaks," aiding and abetting each other, unlawfully and knowingly kidnapped C.V., in violation of California Penal Code Sections 31, 207, and 209.

COUNT SIX

[18 U.S.C. § 1959(a)(5)]

[DEFENDANTS C. GONZALEZ AND SANCHEZ]

1.    Paragraphs 1 through 11 of the General Allegations of this First Superseding Indictment, paragraphs 2 through 9 of Count One of this First Superseding Indictment, and Paragraphs 2 and 3 of Count Two of this First Superseding Indictment are re-alleged and incorporated here.

2.    From on or about April 19, 2015, to on or about May 8, 2015, in Los Angeles and San Bernardino Counties, within the Central District of California, for the purpose of maintaining and increasing position in the Michael Lerma Cell of the Mexican Mafia, an enterprise engaged in racketeering activity, defendants CARLOS GONZALEZ, also known as ("aka") "Popeye," and JUAN SANCHEZ, aka "Squeaks," and others known and unknown to the Grand Jury, conspired to intentionally murder C.V. with malice aforethought, in violation of California Penal Code Sections 182, 187, and 189.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

COUNT SEVEN

[18 U.S.C. §§ 1959(a)(1), 2]

[DEFENDANTS LERMA, C. GONZALEZ, SANCHEZ, AND J.V. GONZALEZ]

1.   Paragraphs 1 through 11 of the General Allegations of this First Superseding Indictment, paragraphs 2 through 9 of Count One of this First Superseding Indictment, and Paragraphs 2 and 3 of Count Two of this First Superseding Indictment are re-alleged and incorporated here.

2.   On or about June 28, 2020, in Los Angeles County, within the Central District of California, for the purpose of maintaining and increasing position in the Michael Lerma Cell of the Mexican Mafia, an enterprise engaged in racketeering activity, defendants MIKE LERMA, also known as ("aka") "Big Mike," CARLOS GONZALEZ, aka "Popeye," JUAN SANCHEZ, aka "Squeaks," and JOSE VALENCIA GONZALEZ, aka "Swifty," each aiding and abetting the others, willfully, deliberately, and with premeditation and malice aforethought, unlawfully murdered S.B., in violation of California Penal Code Sections 31, 187, 189, and 190.

3.   Furthermore, defendant MICHAEL LERMA, aka "Pomona Mike," aka "Big Mike," knowingly and intentionally aided, abetted, counseled, commanded, induced, and procured the commission of the offense alleged above, and willfully caused such offense to be done.

COUNT EIGHT

[18 U.S.C. §§ 1111, 7(3), 2]

[DEFENDANTS LERMA, C. GONZALEZ, SANCHEZ, AND J.V. GONZALEZ]

1.    On or about June 28, 2020, in Los Angeles County, within the Central District of California, in the Metropolitan Detention Center, Los Angeles, a place within the special maritime and territorial jurisdiction of the United States, defendants CARLOS GONZALEZ, also known as ("aka") "Popeye," JUAN SANCHEZ, aka "Squeaks," and JOSE VALENCIA GONZALEZ, aka "Swifty," each aiding and abetting the others, willfully, deliberately, maliciously, and with premeditation and malice aforethought, unlawfully killed S.B.

2.    Furthermore, defendant MICHAEL LERMA, aka "Pomona Mike," aka "Big Mike," knowingly and intentionally aided, abetted, counseled, commanded, induced, and procured the commission of the offense alleged above, and willfully caused such offense to be done.

1

                            COUNT NINE

2

                      [18 U.S.C. §§ 2119(2), 2]

3

           [DEFENDANTS S. GONZALEZ, J.V. GONZALEZ, AND DESHANNON]

4

     1.   On or about July 14, 2013, in Los Angeles County, within

5

the Central District of California, defendants JOSE VALENCIA

6

GONZALEZ, also known as ("aka") "Swifty," and KELLY DESHANNON, aiding

7

and abetting each other, with the intent to cause death and serious

8

bodily harm, attempted to take a motor vehicle, namely, a Mercedes

9

ML360 SUV, that had been transported, shipped, and received in

10

interstate and foreign commerce, from the person and presence of

11

another, namely, E.N. and M.A., by force and violence and by

12

intimidation, resulting in serious bodily injury.

13

     2.   Furthermore, defendant SEFERINO GONZALEZ, aka "Spooky,"

14

knowingly and intentionally aided, abetted, counseled, commanded,

15

induced, and procured the commission of the offense alleged above,

16

and willfully caused such offense to be done.

17

18

19

20

21

22

23

24

25

26

27

28

1

COUNT TEN

2

[21 U.S.C § 846]

3

[DEFENDANTS LERMA, S. GONZALEZ, C. GONZALEZ, J.V. GONZALEZ, AND DIAZ]

4    1.    Paragraphs 1 through 11 of the General Allegations of this
5    First Superseding Indictment and paragraphs 2 through 9 of Count One
6    of this First Superseding Indictment are re-alleged and incorporated
7    here.

8    A.    OBJECTS OF THE CONSPIRACY

9    2.    Beginning on a date unknown to the Grand Jury and
10   continuing to on or about the date of this First Superseding
11   Indictment, in Los Angeles and San Bernardino Counties, within the
12   Central District of California, and elsewhere, defendants MICHAEL
13   LERMA, also known as ("aka") "Pomona Mike," aka "Big Mike," SEFERINO
14   GONZALEZ, aka "Spooky" ("S. GONZALEZ"), CARLOS GONZALEZ, aka "Popeye"
15   ("C. GONZALEZ"), JOSE VALENCIA GONZALEZ, aka "Swifty"
16   ("J.V. GONZALEZ"), and DANIEL DIAZ, aka "Bugsy," aka "Fam Bam," and
17   co-conspirators Cheryl Perez-Castaneda and Inez Perez, and others
18   known and unknown to the Grand Jury, conspired and agreed with each
19   other to knowingly and intentionally distribute, and possess with
20   intent to distribute, the following controlled substances:

21        a.    at least 50 grams of methamphetamine, a Schedule II
22   controlled substance, in violation of Title 21, United States Code,
23   Sections 841(a)(1) and (b)(1)(A)(viii); and

24        b.    a mixture and substance containing a detectable amount
25   of heroin, a Schedule I narcotic drug controlled substance, in
26   violation of Title 21, United States Code, Sections 841(a)(1) and
27   (b)(1)(C).

28

B.   <u>MEANS BY WHICH THE OBJECTS OF THE CONSPIRACY WERE TO BE
     ACCOMPLISHED</u>

3.   The object of the conspiracy was to be accomplished, in substance, as follows:

a.   Defendant LERMA, as a full member of the Mexican Mafia, would have the right to control and tax drug dealing in certain neighborhoods or correctional facilities throughout the Central District of California and elsewhere, including in and around the City of Pomona, in Calipatria State Prison, and in the Metropolitan Detention Center, Los Angeles.

b.   Co-conspirators Cheryl Perez-Castaneda and Inez Perez would be appointed as top-level associates, known as "Señoras," of defendant LERMA and would coordinate and direct the taxing of drug sales in and around Pomona on behalf of defendant LERMA.

c.   Defendant S. GONZALEZ would direct the sales of drugs and the taxing of drug sales in and around Pomona on behalf of defendant LERMA and co-conspirator Cheryl Perez-Castaneda.

d.   Defendants S. GONZALEZ and DIAZ, and co-conspirator Cheryl Perez-Castaneda, would direct others to collect taxes on the sale of drugs in and around Pomona on behalf of defendant LERMA.

e.   Defendants C. GONZALEZ and J.V. GONZALEZ, and co-conspirators Inez Perez and Victor Inclan, would collect taxes on the sale of drugs in and around Pomona on behalf of defendant LERMA.

f.   Unindicted co-conspirator two ("UICC-2") would collect proceeds from the taxing of the sale of drugs in Calipatria State Prison.

g.   Defendant J.V. GONZALEZ, and others known and unknown to the Grand Jury, would direct the collection of proceeds from the

42

1  sale of controlled substances from inmates within MDC-LA on behalf of
2  defendant LERMA.

3        h.   Defendants C. GONZALEZ, SANCHEZ, and J.V. GONZALEZ
4  would threaten and commit acts of violence to collect debts from the
5  sale of controlled substances within MDC-LA on behalf of defendant
6  LERMA.

7  C.   OVERT ACTS

8        4.   On or about the following dates, in furtherance of the
9  conspiracy, and to accomplish the objects of the conspiracy,
10 defendants LERMA, S. GONZALEZ, C. GONZALEZ, J.V. GONZALEZ, and DIAZ,
11 and co-conspirators Cheryl Perez-Castaneda, Inez Perez, and Jose
12 Martinez, and others known and unknown to the Grand Jury, committed
13 and caused to be committed various overt acts within the Central
14 District of California, and elsewhere, including, but not limited to,
15 Overt Acts numbered 20-29, 54-56, and 59-70 as set forth in Section F
16 of Count One of this First Superseding Indictment, which are re-
17 alleged and incorporated here.

18
19
20
21
22
23
24
25
26
27
28

COUNT ELEVEN

[21 U.S.C §§ 841(a)(1), (b)(1)(C)]

[DEFENDANT DIAZ]

On or about July 1, 2016, in Los Angeles County, within the Central District of California, defendant DANIEL DIAZ, also known as ("aka") "Bugsy," aka "Fam Bam," knowingly and intentionally possessed with intent to distribute approximately 7.49 grams of heroin, a Schedule I narcotic drug controlled substance.

1

COUNT TWELVE

2

[18 U.S.C. §§ 924(c)(1)(A), (i), (ii), (iii), 2]

3

[DEFENDANTS S. GONZALEZ, J.V. GONZALEZ, AND DESHANNON]

4       1.   On or about July 14, 2013, in Los Angeles County, within

5   the Central District of California, defendant JOSE VALENCIA GONZALEZ,

6   also known as ("aka") "Swifty," knowingly used and carried a firearm,

7   namely, a Colt model Mustang Mark IV Series 80 .380 caliber semi-

8   automatic pistol, bearing serial number MU58634, during and in

9   relation to, and possessed that firearm in furtherance of, a crime of

10  violence, namely, Assault in Aid of Racketeering, in violation of

11  Title 18, United States Code, Section 1959(a)(3), as charged in Count

12  Two of this First Superseding Indictment, and Attempted Carjacking,

13  in violation of Title 18, United States Code, Section 2119(2), as

14  charged in Count Nine of this First Superseding Indictment, and in so

15  doing, brandished and discharged that firearm.

16      2.   Furthermore, defendants SEFERINO GONZALEZ, aka "Spooky,"

17  and KELLY DESHANNON knowingly and intentionally aided, abetted,

18  counseled, commanded, induced, and procured the commission of the

19  offense alleged above, and willfully caused such offense to be done.

20

21

22

23

24

25

26

27

28

COUNT THIRTEEN

[18 U.S.C. § 924(c)(1)(A)(i)]

[DEFENDANT C. GONZALEZ]

On or about October 28, 2013, in Los Angeles County, within the Central District of California, defendant CARLOS GONZALEZ, also known as "Popeye," knowingly possessed a firearm, namely, a Walther model PPK .380 caliber semi-automatic firearm, bearing serial number 060360, in furtherance of a drug trafficking crime, namely, Conspiracy to Distribute Controlled Substances, in violation of Title 21, United States Code, Section 846, as charged in Count Ten of this First Superseding Indictment.

COUNT FOURTEEN

[18 U.S.C. §§ 924(c)(1)(A)(i), (ii), 2]

[DEFENDANTS C. GONZALEZ AND SANCHEZ]

1.   On or about May 8, 2015, in Los Angeles County, within the Central District of California, defendant JUAN SANCHEZ, also known as ("aka") "Squeaks," knowingly used and carried a firearm, namely, a Rohm model RG-12 .22 caliber revolver, bearing serial number 52469, during and in relation to, and possessed that firearm in furtherance of, a crime of violence, namely, Kidnapping in Aid of Racketeering Activity, in violation of Title 18, United States Code, Section 1959(a)(1), as charged in Count Five of this First Superseding Indictment, and a drug trafficking crime, namely Conspiracy to Distribute Controlled Substances, in violation of Title 21, United States Code, Section 846, as charged in Count Ten of this First Superseding Indictment, and in so doing, brandished that firearm.

2.   Furthermore, defendant CARLOS GONZALEZ, aka "Popeye," knowingly and intentionally aided, abetted, counseled, commanded, induced, and procured the commission of the offense alleged above, and willfully caused such offense to be done.

COUNT FIFTEEN

[18 U.S.C. § 924(c)(1)(A)(i)]

[DEFENDANT DIAZ]

On or about July 1, 2016, in Los Angeles County, within the Central District of California, defendant DANIEL DIAZ, also known as ("aka") "Bugsy," aka "Fam Bam," knowingly possessed a firearm, namely, a Smith & Wesson model SW9VW 9mm caliber semi-automatic pistol, bearing serial number DUM0731, in furtherance of a drug trafficking crime, namely, Conspiracy to Distribute Controlled Substances, in violation of Title 21, United States Code, Section 846, as charged in Count Ten of this First Superseding Indictment, and Possession with Intent to Distribute Heroin, in violation of Title 21, United States, Code, Section 841(a)(1), as charged in Count Eleven of this First Superseding Indictment.

COUNT SIXTEEN

[18 U.S.C. § 924(o)]

[DEFENDANTS C. GONZALEZ AND SANCHEZ]

On or about May 8, 2015, in Los Angeles County, within the Central District of California, defendants CARLOS GONZALEZ, also known as ("aka") "Popeye," and JUAN SANCHEZ, aka "Squeaks," conspired and agreed with each other to knowingly use and carry a firearm, namely, a Rohm model RG-12 .22 caliber revolver, bearing serial number 52469, during and in relation to, and possess that firearm in furtherance of, a crime of violence, namely, Kidnapping in Aid of Racketeering Activity, in violation of Title 18, United States Code, Section 1959(a)(1), as charged in Count Five of this First Superseding Indictment.

1          COUNT SEVENTEEN

2          [18 U.S.C. § 922(g)(1)]

3          [DEFENDANT J.V. GONZALEZ]

4       From on or about July 14, 2013, through July 17, 2013, in Los

5   Angeles County, within the Central District of California, defendant

6   JOSE VALENCIA GONZALEZ, also known as "Swifty" ("J.V. GONZALEZ"),

7   knowingly possessed a firearm, namely, a Colt Model Mustang Mark IV

8   Series 80 .380 caliber semi-automatic pistol, bearing serial number

9   MU58634, and ammunition, namely, seven rounds of Winchester .380

10  caliber ammunition, in and affecting interstate and foreign commerce.

11      Defendant J.V. GONZALEZ possessed such firearm and ammunition

12  knowing that he had been convicted of at least one of the following

13  felony crimes, each punishable by a term of imprisonment exceeding

14  one year:

15      (1) Second Degree Burglary, in violation of California Penal

16  Code Section 459, in the Superior Court of the State of California,

17  County of San Bernardino, case number FCH05640, on or about February

18  13, 2003;

19      (2) Possession of a Firearm by a Felon, in violation of

20  California Penal Code, Section 12021(a)(1), in the Superior Court of

21  the State of California, County of Los Angeles, case number KA078221,

22  on or about February 26, 2007;

23      (3) Possession of a Controlled Substance, in violation of

24  California Health and Safety Code Section 11377(a), in the Superior

25  Court of the State of California, County of Los Angeles, case number

26  KA082815, on or about August 1, 2008; and

27      (4) Possession of Contraband in Prison, in violation of

28  California Penal Code Section 4573.6, in the Superior Court of the

50

State of California, County of Riverside, case number RIF1101117, on
or about July 20, 2012.

COUNT EIGHTEEN

[18 U.S.C. § 922(g)(1)]

[DEFENDANT C. GONZALEZ]

From on or about October 17, 2013, through October 28, 2013, in Los Angeles County, within the Central District of California, defendant CARLOS GONZALEZ, also known as "Popeye" ("C. GONZALEZ"), knowingly possessed a firearm, namely, a Walther model PPK .380 caliber semi-automatic pistol, bearing serial number 060360, and ammunition, namely, seven rounds of Winchester .380 caliber ammunition and one round of CCI/Speer .380 caliber ammunition, in and affecting interstate and foreign commerce.

Defendant C. GONZALEZ possessed such firearm and ammunition knowing that he had been convicted of at least one of the following felony crimes, each punishable by a term of imprisonment exceeding one year:

(1) Taking a Vehicle without the Owner's Consent, in violation of California Vehicle Code Section 10851, in the Superior Court of the State of California, County of Los Angeles, case number KA060041, on or about January 14, 2003; and

(2) Possession of a Firearm by a Felon, in violation of California Penal Code Section 12021(a)(1), in the Superior Court of the State of California, County of Los Angeles, case number KA085054, on about January 21, 2009.

1

COUNT NINETEEN

2

[18 U.S.C. 922(g)(1)]

3

[DEFENDANT SANCHEZ]

4          On or about May 8, 2015, in Los Angeles County, within the

5    Central District of California, defendant JUAN SANCHEZ, also known as

6    "Squeaks" ("SANCHEZ"), knowingly possessed a firearm, namely, a Rohm

7    model RG-12 .22 caliber revolver, bearing serial number 52469, and

8    ammunition, namely, seven rounds of Winchester .22 caliber ammunition

9    and one round of CCI/Speer .22 caliber ammunition, in and affecting

10   interstate and foreign commerce.

11         Defendant SANCHEZ possessed such firearm and ammunition knowing

12   that he had been convicted of at least one of the following felony

13   crimes, each punishable by a term of imprisonment exceeding one year:

14         (1) Carrying a Loaded Firearm, in violation of California Penal

15   Code Section 25850(a), in the Superior Court of the State of

16   California, County of San Bernardino, case number FWV1302331, on or

17   about August 20, 2013;

18         (2) Burglary, in violation of California Penal Code Section 459,

19   in the Superior Court of the State of California, County of Los

20   Angeles, case number KA106933, on or about August 7, 2014; and

21         (3) Identity Theft, in violation of California Penal Code

22   Section 530.5, in the Superior Court of the State of California,

23   County of Los Angeles, case number KA106933, on or about August 7,

24   2014.

25

26

27

28

COUNT TWENTY

[18 U.S.C. 922(g)(1)]

[DEFENDANT DIAZ]

On or about July 1, 2016, in Los Angeles County, within the Central District of California, defendant DANIEL DIAZ, also known as ("aka") "Bugsy," aka "Fam Bam" ("DIAZ"), knowingly possessed a firearm, namely, a Smith & Wesson model SW9VW 9mm caliber semi-automatic pistol, bearing serial number DUM0731, and ammunition, namely, 15 rounds of Federal 9mm caliber ammunition and one round of Winchester 9mm caliber ammunition, in and affecting interstate and foreign commerce.

Defendant DIAZ possessed such firearm and ammunition knowing that he had been convicted of at least one of the following felony crimes, each punishable by a term of imprisonment exceeding one year:

(1)   Possession of a Controlled Substance, in violation of California Health and Safety Code Section 11350, in the Superior Court of the State of California, County of Los Angeles, case number KA094370, on or about May 31, 2011;

(2)   Possession of a Controlled Substance while Armed, in violation of California Health and Safety Code Section 11370.1, in the Superior Court of the State of California, County of Los Angeles, case number KA101165, on or about March 12, 2013;

(3)   Possession of a Controlled Substance while Armed, in violation of California Health and Safety Code Section 11370.1, in the Superior Court of the State of California, County of Los Angeles, case number KA106434, on or about July 1, 2014;

(4)   Felon in Possession of a Firearm, in violation of California Penal Code Section 29800(a)(1), in the Superior Court of

the State of California, County of Los Angeles, case number KA106434,
on or about July 1, 2014; and

    (5)   Felon in Possession of Ammunition, in violation of
California Penal Code Section 30305(a)(1), in the Superior Court of
the State of California, County of Los Angeles, case number KA106434,
on or about July 1, 2014.

NOTICE OF SPECIAL FINDINGS

[18 U.S.C. §§ 3591, 3592]

[DEFENDANTS LERMA, C. GONZALEZ, SANCHEZ, AND J.V. GONZALEZ]

The General Allegations and allegations of Counts Seven and Eight of this First Superseding Indictment are re-alleged and incorporated here.

As to Counts Seven and Eight, defendant MICHAEL LERMA, aka "Pomona Mike," aka "Big Mike":

1.   Was 18 years of age or older at the time of the offense (18 U.S.C. § 3591(a));

2.   Intentionally participated in an act, contemplating that the life of a person would be taken or intending that lethal force would be used in connection with a person, other than a participant in the offense, and S.B. died as a direct result of the act (18 U.S.C. § 3591(a)(2)(C));

3.   Previously had been convicted of a Federal or State offense punishable by a term of imprisonment of more than 1 year, involving the use of a firearm against a person (18 U.S.C. § 3592(c)(2));

4.   Previously had been convicted of another Federal or State offense resulting in the death of a person, for which a sentence of life imprisonment or death was authorized by statute (18 U.S.C. § 3592(c)(3)); and

5.   Previously had been convicted of 2 or more Federal or State offenses, punishable by a term of imprisonment of more than 1 year, committed on different occasions, involving the infliction of, or attempted infliction of, serious bodily injury or death upon a person (18 U.S.C. § 3592(c)(4)).

As to Counts Seven and Eight, defendant C. GONZALEZ, aka "Popeye":

6.   Was 18 years of age or older at the time of the offense (18 U.S.C. § 3591(a));

7.   Intentionally killed S.B. (18 U.S.C. § 3591(a)(2)(A));

8.   Intentionally inflicted serious bodily injury that resulted in the death of S.B. (18 U.S.C. § 3591(a)(2)(B));

9.   Intentionally participated in an act, contemplating that the life of a person would be taken or intending that lethal force would be used in connection with a person, other than a participant in the offense, and S.B. died as a direct result of the act (18 U.S.C. § 3591(a)(2)(C));

10.   Intentionally and specifically engaged in an act of violence, knowing that the act created a grave risk of death to a person, other than a participant in the offense, such that participation in the act constituted a reckless disregard for human life and S.B. died as a direct result of the act (18 U.S.C. § 3591(a)(2)(D));

11.   Committed the offense after substantial planning and premeditation to cause the death of a person (18 U.S.C. § 3592(c)(9)).

As to Counts Seven and Eight, defendant J. SANCHEZ, aka "Squeaks":

12.   Was 18 years of age or older at the time of the offense (18 U.S.C. § 3591(a));

13.   Intentionally killed S.B. (18 U.S.C. § 3591(a)(2)(A));

14.   Intentionally inflicted serious bodily injury that resulted in the death of S.B. (18 U.S.C. § 3591(a)(2)(B));

15.  Intentionally participated in an act, contemplating that the life of a person would be taken or intending that lethal force would be used in connection with a person, other than a participant in the offense, and S.B. died as a direct result of the act (18 U.S.C. § 3591(a)(2)(C));

16.  Intentionally and specifically engaged in an act of violence, knowing that the act created a grave risk of death to a person, other than a participant in the offense, such that participation in the act constituted a reckless disregard for human life and S.B. died as a direct result of the act (18 U.S.C. § 3591(a)(2)(D));

17.  Committed the offense after substantial planning and premeditation to cause the death of a person (18 U.S.C. § 3592(c)(9)).

As to Counts Seven and Eight, defendant J.V. GONZALEZ, aka "Swifty":

18.  Was 18 years of age or older at the time of the offense (18 U.S.C. § 3591(a));

19.  Intentionally killed S.B. (18 U.S.C. § 3591(a)(2)(A));

20.  Intentionally inflicted serious bodily injury that resulted in the death of S.B. (18 U.S.C. § 3591(a)(2)(B));

21.  Intentionally participated in an act, contemplating that the life of a person would be taken or intending that lethal force would be used in connection with a person, other than a participant in the offense, and S.B. died as a direct result of the act (18 U.S.C. § 3591(a)(2)(C));

22.  Intentionally and specifically engaged in an act of violence, knowing that the act created a grave risk of death to a

person, other than a participant in the offense, such that

participation in the act constituted a reckless disregard for human

life and S.B. died as a direct result of the act (18 U.S.C.

§ 3591(a)(2)(D));

  23. Committed the offense after substantial planning and

premeditation to cause the death of a person (18 U.S.C.

§ 3592(c)(9)).

FORFEITURE ALLEGATION ONE

[18 U.S.C. § 1963]

1.     Paragraphs 1 through 11 of the General Allegations of this First Superseding Indictment are re-alleged and incorporated by reference as though fully set forth herein.

2.     The allegations contained in Count One of this First Superseding Indictment are hereby repeated, re-alleged, and incorporated by reference herein as though fully set forth at length for the purpose of alleging forfeiture pursuant to the provisions of Title 18, United States Code, Section 1963.  Pursuant to Rule 32.2, Fed. R. Crim. P., notice is hereby given to the defendants that the United States will seek forfeiture as part of any sentence, in accordance with Title 18, United States Code, Section 1963, in the event of any defendant's conviction under Count One of this First Superseding Indictment.

3.     Any and each defendant convicted of Count One of this First Superseding Indictment shall forfeit to the United States:

a.     any interest said defendant has acquired or maintained in violation of Title 18, United States Code, Section 1962;

b.     any interest in, security of, claim against, or property or contractual right affording a source of influence over, any enterprise which said defendant has established, operated, controlled, conducted, or participated in the conduct of, in violation of Title 18, United States Code, Section 1962; and

c.     any property constituting or derived from any proceeds obtained, directly or indirectly, from racketeering activity in violation of Title 18, United States Code, Section 1962.

4.    Pursuant to Title 18, United States Code, Section 1963(m), each defendant so convicted shall forfeit substitute property, up to the value of the property described in the preceding paragraph, if, as the result of any act or omission of that defendant, the property described in the preceding paragraph, or any portion thereof: (a) cannot be located upon the exercise of due diligence; (b) has been transferred, sold to, or deposited with a third party; (c) has been placed beyond the jurisdiction of the court; (d) has been substantially diminished in value; or (e) has been commingled with other property that cannot be divided without difficulty.

FORFEITURE ALLEGATION TWO

[21 U.S.C. § 853]

1.    The allegations contained in the General Allegations and in Counts One and Ten of this First Superseding Indictment are hereby repeated, re-alleged, and incorporated by reference herein as though fully set forth at length for the purpose of alleging forfeiture pursuant to the provisions of Title 21, United States Code, Section 853.  Pursuant to Federal Rule of Criminal Procedure 32.2, notice is hereby given to the defendants that the United States will seek forfeiture as part of any sentence in accordance with Title 21, United States Code, Section 853, in the event of any defendant's conviction under any of Counts Ten or Eleven of this First Superseding Indictment.

2.    Each defendant convicted under any of Counts Ten through Eleven shall forfeit to the United States any property constituting, or derived from, any proceeds the person obtained, directly or indirectly, as the result of such violation and any of the person's property used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of such violation.

3.    Pursuant to Title 21, United States Code, Section 853(p), each defendant shall forfeit substitute property, up to the value of the total amount described in paragraph 2, if, as the result of any act or omission of said defendant, the property described in paragraph 2, or any portion thereof (a) cannot be located upon the exercise of due diligence; (b) has been transferred, sold to, or deposited with a third party; (c) has been placed beyond the jurisdiction of the court; (d) has been substantially diminished in

value; or (e) has been commingled with other property that cannot be
divided without difficulty.

1                       FORFEITURE ALLEGATION THREE

2                [18 U.S.C. § 924(d); 28 U.S.C. § 2461]

3        1.    Pursuant to Rule 32.2 of the Federal Rules of Criminal

4   Procedure, notice is hereby given to the defendants that the United

5   States will seek forfeiture as part of any sentence in accordance

6   with Title 18 United States Code, Section 924(d), of any defendant's

7   conviction under any of Counts Twelve through Twenty of this First

8   Superseding Indictment.

9        2.    Such defendants shall forfeit to the United States all

10  firearms and ammunition involved in the commission of each such

11  offense, including all firearms and ammunition in this First

12  Superseding Indictment.

13                                       A TRUE BILL

14

15                                        /S/

16                                       Foreperson

17  TRACY L. WILKISON
    Acting United States Attorney
18

19

20  SCOTT M. GARRINGER
    Assistant United States Attorney
    Chief, Criminal Division
21

22  SHAWN J. NELSON
    Assistant United States Attorney
23  Chief, International Narcotics, Money
     Laundering & Racketeering Section

24  MAX B. SHINER
    Assistant United States Attorney
25  Deputy Chief, Violent & Organized
     Crime Section

26

27  KEITH D. ELLISON
    Assistant United States Attorney
    International Narcotics, Money
28   Laundering & Racketeering Section


                                64