JOSEPH T. MCNALLY
Acting United States Attorney
LINDSEY GREER DOTSON
Assistant United States Attorney
Chief, Criminal Division
KYLE W. KAHAN (Cal. Bar No. 298848)
JASON A. GORN (Cal. Bar No. 296179)
KELLYE NG (Cal. Bar No. 313051)
Assistant United States Attorneys
     1400/1300 United States Courthouse
     312 North Spring Street
     Los Angeles, California 90012
     Telephone: (213) 894-2238/7962/8408
     Facsimile: (213) 894-0142
     E-mail:    kyle.kahan@usdoj.gov
                jason.gorn@usdoj.gov
                kellye.ng@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | No. CR 2:18-00172(A)-GW |
|---|---|
| Plaintiff, | GOVERNMENT'S OPPOSITION TO DEFENDANTS' REQUEST FOR PRETRIAL RULING OF ADMISSIBILITY |
| v. | |
| MICHAEL LERMA, *et al.*, | Hearing Date: February 19, 2025 |
| Defendants. | Hearing Time: 1:00 p.m.<br>Location:     Courtroom of the<br>              Hon. George H. Wu |

Plaintiff United States of America, by and through its counsel of record, the Acting United States Attorney for the Central District of California and Assistant United States Attorneys Kyle W. Kahan, Kellye Ng, and Jason A. Gorn, hereby files its Opposition to Defendant's Request for Pretrial Ruling of Admissibility.

///

///

This opposition is based upon the attached memorandum of points and authorities, the files and records in this case, and such further evidence and argument as the Court may permit.

Dated: February 18, 2025

Respectfully submitted,

JOSEPH T. MCNALLY
Acting United States Attorney

LINDSEY GREER DOTSON
Assistant United States Attorney
Chief, Criminal Division

*/s/ Kyle W. Kahan*
KYLE W. KAHAN
KELLYE NG
JASON A. GORN
Assistant United States Attorneys

Attorneys for Plaintiff
UNITED STATES OF AMERICA

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.   INTRODUCTION**

Defendant Michael Lerma ordered the death of S.B. due to debts owed to his enterprise. Defendants Carlos Gonzalez, Jose Valencia Gonzalez, and Juan Sanchez ambushed S.B. inside of his cell, strangled, and stabbed him to death. Defendants then forced S.B.'s cellmate to spend the night with a dead body underneath his bunk bed before he was allowed to alert Bureau of Prison ("BOP") Correctional Officers to check his cellmate the following morning.

Defendants seek to bypass the rules of evidence and introduce evidence that is not properly admissible under any hearsay exception or is unduly prejudicial. Should defendant seek to introduce these exhibits, it should call the witness who observed what is contained in the documents. However, defendants attempt to admit unchallenged, unvetted, and untrustworthy statements and records before the jury, which will leave the government with no redress. This Court should deny defendants' motion.

**II.   STATEMENT OF FACTS**

On June 28, 2020, at approximately 2:46 p.m., S.B. was called over to his cell by another inmate at the Metropolitan Detention Center – Los Angeles' ("MDCLA") 6 North Unit. S.B. walked over to his cell accompanied by defendant Juan Sanchez. A few seconds later, defendants Carlos Gonzalez and Jose Valencia Gonzalez left their nearby cell and walked towards S.B.'s cell. Defendant Michael Lerma walked towards S.B.'s cell shortly after. After approximately ten minutes, all four defendants returned to their cells or other inmates' cells. S.B. was never seen alive again.

S.B.'s cellmate, J.M., returned to his cell after the defendants left and discovered S.B. on the bottom bunk – J.M.'s bed. Defendants viciously and violently strangled S.B. and stabbed him twice in the chest and once in the eye. Through defendants' orders, J.M. was forced to sleep overnight with S.B. either dead or dying on his own bed. Despite S.B. being either dead or dying, BOP correctional officers marked him during standup counts during the 4:00 p.m. and 9:00 p.m. counts. At approximately 6:00 a.m., J.M. left his cell, and after receiving permission from defendant Jose Valencia Gonzalez, he alerted the guards to check his cellmate before walking away. Inside, BOP employees discovered S.B. dead on the bottom bunk. Law enforcement and medical personnel responded to the scene, including members of the FBI and Los Angeles County Department of the Coroner.[1]

The Coroner Investigator, Alexander Lemus, drafted a report documenting his observations and findings, including his viewing of S.B.'s body after it had been removed from the cell. His report documented conversations he had with BOP personnel, including their observations and beliefs regarding when S.B. was last seen alive. This includes a statement by BOP Lieutenant Wilson. Lt. Wilson informed Investigator Lemus about the discovery of S.B.'s body by guards, the status of S.B.'s body and injuries, the official time of death, and when S.B. was last seen alive by guards.

---

[1] Now the Los Angeles County Department of the Medical Examiner.

**III. ARGUMENT**

    **A.   Third Party Statements in the Coroner Investigator's Report Are Inadmissible Hearsay**

        1.   <u>Statements Made by Lt. Wilson and BOP Guards Are Not Public Records</u>

The parts of Investigator Lemus's report reflecting his observations and what he did as part of <u>his</u> investigation are admissible public records. However, Investigator Lemus's report contains hearsay statements not only from Lt. Wilson, but also from unknown guards relaying their purported observations to him. These statements must be stricken from Investigator Lemus's report should they be admitted as evidence.

A document can be admitted as a public record if it sets out the office's activities, contains a "matter observed while under a legal duty to report, but not including, in a criminal case, a matter observed by law enforcement personnel," or, if used against the government in a criminal case, contains "factual findings from a legally authorized investigation." Fed. R. Evid. 803(8)(A)(i)-(iii). Any record or statement must be trustworthy. Fed. R. Evid. 803(8)(B). The party opposing the admission of the record or statement must demonstrate that the document is untrustworthy. <u>Id.</u> Defendant has conflated Rule 803(8)'s requirements in an attempt to sneak in inadmissible statements made by Lt. Wilson and documents reflecting a 4:30 a.m. body count. The Court should not admit these statements.

<u>First</u>, neither Lt. Wilson nor the guards' statements themselves constitute a public record. Investigator Lemus's factual findings or opinions are, indeed, admissible under this rule. <u>See</u> <u>Johnson v.</u>

3

1  City of Pleasanton, 982 F.2d 350, 353 (9th Cir. 1992).  However,
2  because the Coroner Investigator's report was drafted by Mr. Lemus
3  and not Lt. Wilson or a BOP guard who made the observations contained
4  within, only the observations and factual findings made by Mr. Lemus
5  are admissible as a public record.[2]  Fed. R. Evid. 803(8) (only
6  admitting public records containing "factual findings," not "facts"
7  learned through the investigation).  Neither Lt. Wilson's statements,
8  nor the guards' statements, constitute factual findings made by
9  Investigator Lemus.  Had Investigator Lemus synthesized these
10 statements alongside his own investigation and reached a conclusion
11 or opinion regarding S.B., that would likely be admissible.  However,
12 that is not what happened here.  Instead, Investigator Lemus simply
13 interviewed a BOP Lieutenant and documented what he told him.
14 Nowhere in the report does Investigator Lemus draw any conclusions
15 using that information.
16         Second, neither Lt. Wilson nor the guards' statements describe
17 the activity of the governmental entity performing the investigation,
18 namely, the Department of the Coroner.  As such, the statements
19 cannot be admitted alongside Investigator Lemus's report and must be
20 excluded and redacted unless a hearsay exception exists.  United
21 States v. Morales, 720 F.3d 1194, 1202 (9th Cir. 2013).
22         2.   No Hearsay Exception Applies
23    Defendants fail to cite any applicable hearsay exception under
24 Rules 803 or 804.  First, Investigator Lemus's report is not a
25 business record because it is a record of a government agency.  Id.

---

[2] And because Investigator Lemus did not observe what Lt. Wilson told him, those statements cannot constitute a public record under Rule 803(8)(A)(i)-(ii).

4

at 1201 (Noting Rule 803(6) for business records "does not apply to records of government agencies, which are public records for purposes of Rule 803"). Any reliance on evidentiary rules encompassing business records is misplaced. Cf. 28 U.S.C. § 1732 (allowing second-step hearsay under the exception for business records); United States v. Pittman 475 F.2d 1335, 1337 (9th Cir. 1973) (same).

Lt. Wilson and the guards' statements are also not statements made by a party opponent. Not every publication or statement made by a branch of the government is a party admission. United States v. Mirabal, 98 F.4th 981, 986-87 (9th Cir. 2024) (narrowly holding that pleas signed by Department of Justice attorneys can be used against the Department of Justice in a criminal prosecution); United States v. Van Griffin, 874 F.2d 634, 638 (9th Cir. 1989) (holding a government manual created by a relevant and competent government section admissible against the government).

Indeed, the Department of Justice itself is the party-opponent in a criminal case, not every federal agency. United States v. Kattar, 840 F.2d 118, 130-31 (1st Cir. 1988); Mirabal, 98 F.4th at 986-87 ("Today, we hold only that 'in criminal cases, the Justice Department certainly should be considered' a party-opponent of criminal defendants.") (citing Kattar, 840 F.2d at 130).[3] Likewise, the statements cannot be admissible under Van Griffin because that holding is limited to government pamphlets and materials, not oral statements. 874 F.2d at 638 ("We do not say every publication of

---

[3] The Mirabal court limited the scope of Rule 801(d)(2) to "government attorney's statements in plea agreements and sentencing memoranda." 98 F.4th at 987.

5

every branch of government of the United States can be treated as a party admission . . . .") (emphasis added).

### 3. The Statements Are Untrustworthy and Unduly Prejudicial

Lt. Wilson's statements to Investigator Lemus are untrustworthy. Accordingly, they are inadmissible. Fed. R. Evid 403; Fed. R. Evid. 803(8)(B). To be clear, the government is not asserting that Lt. Wilson himself is untrustworthy or not credible. However, his statement – as contained in Investigator Lemus's report – is untrustworthy because it is vague and relies on unattributed statements and documents. Specifically, Lt. Wilson's statement appears to rely on count slips by guards documenting when S.B. was "last known alive." Nothing in Lt. Wilson's statement gives any indication that he was personally aware of any of these facts beforehand or was one of the guards performing the count. Instead, Lt. Wilson acted as a conduit of information provided by others – each of which is an inadmissible hearsay statement. This not only makes the statement untrustworthy under Rule 803(8)(B), but also unduly prejudicial as it would mislead the jury into thinking Lt. Wilson had the proper foundation to make that claim without questioning by either party.

In sum, defendants are attempting to introduce multiple layers of hearsay in lieu of presenting witnesses who directly made observations beneficial to their case. Should defendants wish to introduce these statements, they should call Lt. Wilson or the guards who conducted the counts. Defendants' attempt to bypass the rules of evidence should be rejected and this Court should deny defendants'

6

attempt to introduce multiple levels of hearsay through a single document.

### B. The BOP Policies Are Misleading and Would Divert the Jury's Attention from the Actual Issues at Trial

The BOP Manuals and MDCLA inmate brochure and institutional supplements (the "BOP Documents") should be excluded because they will mislead the jury and confuse the issues. Fed. R. Evid. 403. The BOP Documents contain numerous statements regarding BOP practices, including at MDCLA. The government does not object to BOP employees testifying on the relevant procedures, policies, and orders in effect at the time of the incident or other events. The BOP Documents, however, imply that these procedures, policies, and orders were actually followed and adhered to in 2020.

Without actual testimony confirming this, the jury would put undue weight on these documents. See, e.g., Martin v. Cavalier Hotel Corp., 48 F.3d 1343, 1357-58 (9th Cir. 1995) (excluding report reaching specific conclusions due to the prejudicial effect the report would have on the jury and the availability of parties to testify to the report's contents at trial); Carter v. Burch, 34 F.3d 257, 265 (4th Cir. 1994) (finding the probative value of a letter opinion to be substantially outweighed by undue prejudice because the opinion "decided the precise issue before the jury . . . thereby making it likely the jury would have placed undue weight on such evidence.") Because there are witnesses available to the defense to discuss what policies and procedures were actually in place at MDCLA, and because the BOP Documents only reflect what should have been in place, the latter lacks probative value in this case and would only serve to mislead the jury. Fed. R. Evid. 403.

7

### C. Sanctions Imposed by the BOP on Other Inmates Is Irrelevant and Unduly Prejudicial

Defendant seeks to introduce sanctions imposed on other defendants at MDCLA. These sanctions are irrelevant as they have no bearing on what occurred or did not occur on June 28 and 29, 2020. Fed. R. Evid. 402. Sanctions imposed on inmates unrelated from this case do not indicate that proper count protocols were followed on these dates. Defendant instead seeks to invite speculation and claim that because sanctions were imposed on a limited number of inmates some days in 2020, then the absence of sanctions on June 28 and 29, 2020 proves that proper count procedures were followed and S.B. could not have been dead before June 29. This speculative leap without context or testimony would only serve to confuse the jury and allow defendants to argue that proper count procedures took place on June 28 without calling any witnesses to verify it. Given its highly prejudicial effects compared to its minimal probative value, they should be excluded.

### D. The Counts Are Untrustworthy and Cannot be Preadmitted as Public Records Until This Court Hears Testimony

Finally, defendant seeks to introduce count slips from June 28 and 29, 2020. As will be argued at trial, the government contends that, based on testimony and surveillance footage, defendant Lerma ordered the killing of S.B. over a debt owed to his Enterprise. As a result, defendants Carlos Gonzalez, Jose Valencia Gonzalez, and Juan Sanchez followed S.B. to his cell on June 28, 2020 at around 2:46 p.m., and killed him. The government anticipates the evidence to show that S.B. was found unresponsive in his cell not even 30 minutes

8

later.  This alone creates a significant dispute over the trustworthiness of the count slips.  Had proper count procedures been followed, S.B.'s unresponsive or dead body would have presumably been discovered at 4:00 p.m. or 9:00 p.m.  Instead, his body remained on the bottom bunk bed until it was discovered the following morning.  Because of this critical dispute at the heart of the case, it cannot be said that the count slips are trustworthy without testimony confirming it.  Because the count slips lack trustworthiness, they cannot be admitted as public records.  Fed. R. Evid. 803(8)(B).

**IV.  CONCLUSION**

For the foregoing reasons, the government respectfully requests that this Court deny defendants' motion.