TODD BLANCHE
Deputy Attorney General
BILAL A. ESSAYLI
First Assistant United States Attorney
ALEXANDER B. SCHWAB
Assistant United States Attorney
Acting Chief, Criminal Division
KYLE W. KAHAN (Cal. Bar No. 298848)
KELLYE NG (Cal. Bar No. 313051)
JASON A. GORN (Cal. Bar No. 296179)
Assistant United States Attorneys
    1400/1300/1200 United States Courthouse
    312 North Spring Street
    Los Angeles, California 90012
    Telephone: (213) 894-2238/8408/7962
    Facsimile: (213) 894-0142
    E-mail:   kyle.kahan@usdoj.gov
                kellye.ng@usdoj.gov
                jason.gorn@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>       Plaintiff,<br><br>       v.<br><br>JOSE VALENCIA GONZALEZ,<br>    aka "Swifty,"<br><br>       Defendant. | No. CR 2:18-00172(A)-GW-8<br><br>GOVERNMENT'S SENTENCING POSITION FOR DEFENDANT JOSE VALENCIA GONZALEZ; EXHIBITS<br><br>Hearing Date: March 9, 2026<br>Hearing Time: 8:00 a.m.<br>Location:    Courtroom of the<br>                 Hon. George H. Wu |

    Plaintiff United States of America, by and through its counsel of record, the First Assistant United States Attorney for the Central District of California, and Assistant United States Attorneys Kyle W. Kahan, Kellye Ng, and Jason A. Gorn, hereby files its sentencing position for defendant Jose Valencia Gonzalez.

    This position is based upon the attached memorandum of points and authorities, the evidence at trial, the files and records in this

case, exhibits, and such further evidence and argument as the Court may permit.  The government reserves the right to file any supplemental sentencing position that may be necessary.

Dated: March 2, 2026                Respectfully submitted,

                                               TODD BLANCHE
                                               Deputy Attorney General

                                               BILAL A. ESSAYLI
                                               First Assistant United States Attorney

                                               ALEXANDER B. SCHWAB
                                               Assistant United States Attorney
                                               Acting Chief, Criminal Division

                                               */s/*
                                               KYLE W. KAHAN
                                               KELLYE NG
                                               JASON A. GORN
                                               Assistant United States Attorneys

                                               Attorneys for Plaintiff
                                               UNITED STATES OF AMERICA

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.   INTRODUCTION**

Jose "Swifty" Valencia Gonzalez ("defendant") is a violent murderer who brutally enforced the rules of the Michael Lerma Cell of the Mexican Mafia on federal inmates and civilians under its control and expanded the Mexican Mafia's drug operations throughout the city of Pomona.  This includes the brutal stabbing and strangulation of S.B., a fellow inmate at the Los Angeles Metropolitan Detention Center ("MDC") in June 2020 and the separate shooting of M.A. in Covina during an extortion scheme over a car in July 2013 where defendant unlawfully possessed the firearm as a felon.  Defendant committed this murder and multiple extortion schemes because he was a willing and eager participant in a racketeering conspiracy that instilled fear in those under its rule and committed violence against those that defied it.  Defendant's extortion and drug takeover in Pomona were at the behest of another Mexican Mafia shot caller, Seferino Gonzalez, who remarked "If these fools get crazy, Swifty knows how to handle it."  (Gov't Trial Ex. 212.)  While a member of this criminal enterprise, defendant, also engaged in a successful drug distribution conspiracy in Pomona and MDC and extorted individuals both in custody and in the community.  Because of his conduct, defendant now faces a mandatory life sentence.

**II.   DEFENDANT MURDERS S.B. INSIDE OF A JAIL CELL**

Defendant has been in federal custody for this case since May 2018.  (Dkt. 110.)  The criminal enterprise was the Michael Lerma Cell of the Mexican Mafia, an organization controlled by Michael Lerma, a Mexican Mafia brother, that controlled territories inside and outside of correctional facilities and maintained power through

violence and extortion. (Dkt. 1900, "Revised PSR" ¶¶ 32-35, 37.) Defendant acted as a foot soldier and enforcer in this enterprise – an enterprise he joined years prior as indicated in Seferino Gonzalez's jail calls from 2013. (Revised PSR ¶¶ 48-50.)

While awaiting trial, defendant was housed at MDC in the 6 North ("6N") range in 2020. Defendant shared a cell with his co-defendant and brother, Carlos Gonzalez, in cell 627. Next door, in cell 627, were defendant's co-defendants Juan Sanchez and Michael Lerma. Since July 2018, after being transferred to MDC, Lerma claimed control over the MDC facility while defendant along with Carlos Gonzalez and Juan Sanchez assisted Lerma. (Revised PSR ¶ 51.)

In 2020, a Sureño MDC inmate, S.B., accumulated a drug debt to Lerma's enterprise. (Revised PSR ¶ 55.) On June 28, 2020, Lerma ordered the murder of S.B. (Id.) As part of a coordinated plan between defendant, his brother Carlos, and Juan Sanchez, the latter lured S.B. into S.B.'s cell during a 15-minute window for inmates to remain out of their cells during the ongoing COVID-19 pandemic. (Revised PSR ¶¶ 57.) As the two entered S.B.'s cell, Sanchez pushed him inside. (Id.) After Sanchez pushed S.B. into the cell – as seen on surveillance footage and testified to by witnesses – Carlos Gonzalez and Jose Valencia Gonzalez left their cell – where they laid in wait – and followed Sanchez and S.B. (Id.; Gov't Trial Exhibits 1-16, 166.)

Once inside the cell, defendant, Carlos Gonzalez, and Sanchez murdered S.B. (Revised PSR ¶ 58.) The trio strangled S.B., stabbed him twice in the heart, and once in the eye. (Revised PSR ¶ 52.) Then they placed S.B. on the bottom bunk, covered him with a blanket, and left him there.

## III. DEFENDANT'S EXTORTION AND DRUG CONSPIRACY ON BEHALF OF THE MICHAEL LERMA CELL OF THE MEXICAN MAFIA

As early as 2013, defendant would extort, through a pattern of racketeering activity, the drug dealers in the Pomona area that were controlled by Lerma. (Revised PSR ¶¶ 48-50.) Defendant kept the proceeds from the extortion (or "taxing") of the sale of methamphetamine while defendant Lerma profited directly from heroin sales. (Id.) In recorded jail calls, defendant openly spoke of "taxing" the proceeds of methamphetamine in the Pomona area. (Id.) The "Señora" (the one who managed drug proceeds) for Lerma, Cheryl Perez-Castaneda, profited along with defendant at a drug sales location known as "The Compound" after defendant took it over for Lerma in 2013. (Id.)

In July 2018, after Lerma's arrival at MDC, defendant joined Lerma's extortion and drug distribution scheme. (Revised PSR ¶ 51) As part of this scheme, defendant was entrusted to enforce Lerma's will on the inmates who owed drug debts to the Lerma cell of the Mexican Mafia and also control the distribution of various narcotics within MDC. (Id.) As accounted for in the testimony of other inmates at the trial, defendant violently beat up multiple inmates for failing to pay drug debts or violating other conduct rules imposed by the Michael Lerma Cell of the Mexican Mafia.

## IV. DEFENDANT, A FELON, POSSESSED A FIREARM AND AMMUNITION AS HE EXTORTED AND SHOT AN INTERVENING WITNESS

From July 14, 2013 through July 17, 2013, defendant possessed a Colt Model Mustang Mark IV Series 80 firearm while previously convicted of a felony. (Revised PSR ¶ 54.) Defendant was prohibited from possessing a firearm due to his prior felony convictions for

3

Second Degree Burglary, Possession of a Firearm by a Felon, Possession of a Controlled Substance, and Possession of Contraband in Prison. (Id.) At trial, victim M.A. identified this firearm as the one defendant used during the commission of a robbery in Covina where defendant shot M.A. in the leg while attempting to steal car keys from M.A.'s then-girlfriend.

## V.   VICTIM IMPACT STATEMENT AND RESTITUTION

Defendant's role in the enterprise led to the brutal murder of a father. (See Gov't Sealed Exhibit A – Victim Impact Statement.) As S.B.'s daughter recounts in her victim impact statement, defendant's actions were cruel. (Id.) Defendant took away S.B.'s ability to walk his daughter down the aisle and dance with her at her wedding. (Id.) He took away S.B.'s ability to remain a great father who could provide guidance and loved his daughter unconditionally. (Id.)

Defendant has left S.B.'s daughter, A.B., longing for a dad who cannot come back because of his vile actions. (Id.) Throughout this trial, it was clear that defendant had control over those in his dominion. Sadly, as demonstrated here, his control over those that got in his way reached out to the innocent as collateral damage. S.B. did not deserve what happened to him. His daughter did not deserve to lose her father in such a brutal and twisted manner. Her victim impact statement clearly shows the levels of grief defendant has inflicted on her. Her ability to forgive speaks volumes of her character.

Given defendant's conduct, in addition to the custodial sentence, he should be ordered to pay – jointly and severally with his co-defendants – the funeral expenses for S.B. (Gov't Sealed Exhibit B – S.B. Funeral Expenses; Revised PSR ¶¶ 198-199.)

4

**VI.  GUIDELINES CALCULATIONS**

   The United States Probation and Pretrial Services Office calculated a total offense level of 43 pursuant to the following calculations:

<u>Counts One/Seven/Eight:</u>
  Base Offense Level:      43              U.S.S.G. § 2A1.1(a)

<u>Count Ten:</u>                 24     U.S.S.G. § 2D1.1(a)(5), (c)(8)
  Base Offense Level:

<u>Count Seventeen:</u>
  Base Offense Level:      14              U.S.S.G. §§ 2K2.1(a)(6)

(Revised PSR ¶¶ 74-108.)

   After calculating the appropriate total adjusted offense level and incorporating the multiple count adjustment, the USPO calculated a combined adjusted offense level of 43. (Revised PSR ¶ 108.)  The Probation Office also calculated a Criminal History score of 22, placing defendant in Criminal History Category VI.  (Revised PSR ¶¶ 111-126.)  The government agrees with these calculations.

   With a total adjusted offense level of 43 and a Criminal History Category of VI, the Guidelines Range is life imprisonment.  Because defendant was convicted of VICAR Murder and first-degree murder within the special maritime and territorial jurisdiction of the United States, he faces a mandatory life sentence.

**VII. GOVERNMENT'S RECOMMENDATION**

   The government respectfully recommends that the Court impose a sentence of life imprisonment for Counts 1, 7, and 8, and 10; and a

10-year sentence for Count 17, all to be served concurrently, order that defendant pay the mandatory special assessment of $500, and order defendant pay $10,365.24 in restitution to S.B.'s Estate. The government further requests this sentence be ordered to run consecutive to any time remaining in defendant's two state cases in the Superior Court for the State of California, County of Los Angeles, Case No. KA104571 and County of San Bernardino, Case No. FWV1401103. This sentence is appropriate, reasonable, and not greater than necessary, in light of all the factors the Court must consider under 18 U.S.C. § 3553(a).

### A. Nature and Circumstances of the Offense

Defendant's role as the eager member of a criminal enterprise and willingness to viciously murder an inmate over a drug debt and respect demonstrates his dangerousness. His direct involvement in the murder of an inmate at a BOP facility and attempts to cover-up the crime reflects his cruelty, his cunning, and his desire to place reputation and gang mentality over a human life. He was loyal to Lerma, a Mexican Mafia member who controlled criminal activities and rules at jail and prison facilities in Southern California, and the city of Pomona. Defendant operated in all of those spheres and demonstrated his active and trusted involvement. Lerma ran, with defendant's active assistance, a drug-trafficking and extortion racket that allowed inmates to smuggle, sell, and use methamphetamine and heroin at inflated prices. Lerma further ordered the beatings and stabbings of inmates who broke his rules. Defendant followed those orders and repeatedly committed violent acts based on those orders. Lerma's enterprise members also attempted to extort a young woman into giving it a car owed as a debt in July 2013; an extortion

that ended with defendant shooting the woman's boyfriend, M.A., in the leg.

The murder in this case demonstrates terrible cruelty. S.B. was not simply murdered. He was lured, isolated, and ambushed. He was viciously strangled. He was stabbed twice in the heart. And then he was stabbed in the caruncle of S.B.'s eye – a precise stabbing that was practically undetectable until the autopsy. The nature and circumstances of defendant's conduct are simply ruthless. A life sentence is necessary, appropriate, and required given the scope and callousness of defendant's conduct.

### B. History and Characteristics of Defendant

Defendant's history and circumstances, as well as the need to protect the public reflect an ongoing danger to the community. Defendant is a longstanding member of the Pomona Cherryville street gang, a Sureño gang that owes allegiance to the Mexican Mafia. His tattoos and conduct show his commitment to the gang. (Revised PSR ¶¶ 118-20, 129, 151.) Consistently defendant has engaged in criminal behavior, starting with a sustained petition in 1996 for automobile theft. (Revised PSR ¶ 111.) From there, defendant continued to amass convictions, including second degree burglary (Revised PSR ¶ 116), firearm possession as a felon (Revised PSR ¶¶ 119, 124) and forgery (Revised PSR ¶ 123.) Defendant also has a long history of misdemeanor and felony drug convictions. (Revised PSR ¶¶ 115, 117-118, 120-122.)

Defendant's family history and health issues do not present any kind of mitigating factors before this Court, notwithstanding the mandatory life sentence. S.B. had a family. S.B. had to live with the terror of owing a violent enterprise a debt. S.B. had to suffer

7

being actively strangled and stabbed by three men for that debt. Defendant should have considered his wife and children as he murdered S.B. Instead, as his history suggests, he places the needs of a gang over everything else. A life sentence is necessary to minimize the harm he can instill on the community and others.

### C. Need for Deterrence and to Promote Respect for the Law

Despite having convicted of multiple offenses tied to his gang – offenses that kept him away from his wife, children, and community, defendant decided to participate in a planned and violent murder of an inmate. A life sentence in this case will promote a respect for the law and ensure that those involved in similar racketeering activity for dangerous, violent gangs, understand the consequences for their acts. And the defendant's conduct in this case warrants one of the most severe consequences – a mandatory life sentence and restitution owed to the surviving family of the man he murdered. Defendant's conduct and history clearly demonstrate a disrespect for the law and to the health and wellbeing of anyone who gets in his gang's way. Given this, a life sentence is just.

## VIII. CONCLUSION

For the foregoing reasons, the government respectfully submits that defendant should be sentenced to concurrent life sentences on Counts 1, 7, 8, and 10, a 10-year sentence on Count 18, all to run consecutive to any time remaining in his California state kidnapping sentence, a five-year term of supervised release, a special assessment of $500, and restitution to the estate of S.B. totaling $10,365.24.

8

**DECLARATION OF JASON A. GORN**

I, Jason A. Gorn, declare as follows:

1. I am an Assistant United States Attorney in the Central District of California. I am one of the assigned attorneys in the matter of United States v. Lerma, *et al.*, Case No. 2:18-CR-00172(A)-GW-1,6,7,8.

2. Attached to this sentencing memorandum are true and correct copies of the following exhibits:

| Exhibit | Exhibit Name |
|---|---|
| A<br><br>**(UNDER SEAL)** | A.B. Victim Impact Statement |
| B<br><br>**(UNDER SEAL)** | Victim Restitution Document – Funeral Expenses |

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that this declaration is executed at Los Angeles, California, on March 2, 2026.

JASON A. GORN
Declarant

9