TODD BLANCHE
Deputy Attorney General
BILAL A. ESSAYLI
First Assistant United States Attorney
ALEXANDER B. SCHWAB
Assistant United States Attorney
Acting Chief, Criminal Division
KYLE W. KAHAN (Cal. Bar No. 298848)
Assistant United States Attorney
Deputy Chief, General Crimes Section
KELLYE NG (Cal. Bar No. 313051)
Assistant United States Attorney
Major Crimes Section
JASON A. GORN (Cal. Bar No. 296179)
Assistant United States Attorney
Transnational Organized Crime Section
     1200/1300/1400 United States Courthouse
     312 North Spring Street
     Los Angeles, California 90012
     Telephone: (213) 894-2238/8408/7962
     Facsimile: (213) 894-3713
     E-mail:   kyle.kahan@usdoj.gov
               kellye.ng@usdoj.gov
               jason.gorn@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | CR No. 2:18-00172(A)-GW-1,6,7,8 |
|---|---|
| Plaintiff, | GOVERNMENT'S CLOSING BRIEF RE: DEFENDANTS' MOTIONS FOR JUDGMENTS OF ACQUITTAL AND MOTIONS FOR NEW TRIAL (DKTS. 1799; 1800; 1802; 1803; 1804; 1805; 1807; 1808; 1809) |
| v. | |
| MICHAEL LERMA, *et al.*, | |
| [#1 MICHAEL LERMA]<br>[#6 CARLOS GONZALEZ]<br>[#7 JUAN SANCHEZ]<br>[#8 JOSE VALENCIA GONZALEZ] | |
| Defendants. | |

Plaintiff United States of America, by and through its counsel of record, the First Assistant United States Attorney for the Central District of California and Assistant United States Attorneys Kyle W.

Kahan, Kellye Ng, and Jason A. Gorn, hereby files its closing brief following the evidentiary hearings for defendants' motions for a judgment of acquittal and for a new trial.

This closing brief is based upon the attached memorandum of points and authorities, exhibits, declarations, testimony from the February 12 and 23, 2026 evidentiary hearings, the files and records in this case, and such further evidence and argument as the Court may permit.

Dated: March 5, 2026           Respectfully submitted,

TODD BLANCHE
Deputy Attorney General

BILAL A. ESSAYLI
First Assistant United States Attorney

ALEXANDER B. SCHWAB
Assistant United States Attorney
Acting Chief, Criminal Division

        /s/
KYLE W. KAHAN
KELLYE NG
JASON A. GORN
Assistant United States Attorneys

Attorneys for Plaintiff
UNITED STATES OF AMERICA

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.   INTRODUCTION**

Defendant Michael Lerma, a member of the Mexican Mafia, controlled criminal activity within several state and federal custodial facilities and the City of Pomona using the criminal enterprise he created to exercise that power. His co-defendants, Carlos Gonzalez, Juan Sanchez, and Jose Valencia Gonzalez, served as soldiers and enforcers within that enterprise. This power culminated with the murder of Steve Bencom in the Metropolitan Detention Center ("MDC") on June 28, 2020 and ended with defendants' RICO, VICAR murder, first-degree murder, drug trafficking, and felon-in-possession of firearms convictions following a five-week jury trial.

The evidence of the defendants' guilt was strong. Four men walked into Bencom's cell. Only three men walked out. Those three men were defendants Carlos Gonzalez, Juan Sanchez, and Jose Valencia Gonzalez who committed a murder at the behest of Lerma in sequence while multiple testifying witnesses for the government watched from afar. Surveillance video corroborated the witnesses' accounts at trial and the defendants' admissions before and after the murder captured the moment defendants were alone with Bencom.

Following their convictions, each defendant individually and jointly moved for a judgment of acquittal pursuant to Federal Rule of Criminal Procedure ("Rule") 29 and for a new trial pursuant to Rule 33. (Dkt. 1799, 1800, 1802, 1804). The Court denied these motions (Dkt. 1868), but narrowly ordered an evidentiary hearing to determine the credibility and counsels' diligence in obtaining the alleged newly discovered evidence: the two witness declarations from MDC inmates Daniel Navarro ("Navarro") and Johnny G. Macias ("Macias").

(Dkt. 1843). Navarro and Macias averred in sworn declarations that government's witness J.M., who was Bencom's cellmate at the time of the murder, had admitted to them that he murdered Bencom. (Dkt. 1843).

Neither Navarro nor Macias were present in 6N where the murder took place. In a declaration, the defense proffered Lerma's former cellmate from 2024, Macias, who repeatedly invoked his Fifth Amendment privilege against self-incrimination at the evidentiary hearing. As a result, this declaration should be stricken since Macias was entitled to that privilege and the invocation blocked inquiry into direct matters of the murder and his statements contained in his declaration.[1] Navarro, an inmate and recently convicted child sex offender, gave a kaleidoscopic account of how he received and read J.M.'s "confession" in kites that he failed to preserve, admitted errors in his declaration, feigned poor eyesight when testifying to the accuracy of his declaration but claimed to see J.M. fishing kites while in MDC, admitted he testified at his trial yet denied some of the charges he was ultimately convicted of, and lacked any credibility during the Court's questioning. Nor was this evidence new. Navarro claimed that he did not know when he disclosed J.M.'s alleged confessions, but recounted that one of the defendants was present with him in lockup at the First Street Courthouse. This only infers a timeline prior to the end of defendants' trial and not after. Ultimately, the evidence at trial overwhelmingly supported

---

[1] In the event this Court strikes Macias' testimony, the testimony of government's impeachment witness, former BOP Investigator Arthur Martirosyan, becomes irrelevant and should also be stricken as the purpose of this testimony was only for Macias' impeachment and bias.

2

guilty verdicts on all counts and is unrebutted by evidence that is neither new nor credible.

**II.  Defendants Are Unable to Demonstrate Newly Discovered Evidence**

Defendants' joint motions for a new trial based on newly discovered evidence requires that they meet the five-factor test under United States v. Harrington, 410 F.3d 598, 601 (9th Cir. 2005). This test requires that defendants prove: (1) the evidence is newly discovered; (2) the failure to discover the evidence sooner was not the result of lack of diligence; (3) the evidence is material to the issues at trial; (4) the evidence is neither cumulative nor impeaching; and (5) the evidence indicated that a new trial would probably result in acquittal. Id. Even if this Court entertained the proffered evidence, none of it is newly discovered. At the evidentiary hearing, Navarro claimed he first disclosed the information while one of the defendants was in lock up at the First Street Courthouse in the first part of 2025. A review of Navarro's docket reveals the following court appearances in early 2025: (1) a January 14, 2025 status conference; (2) a February 14, 2025 status conference; and (3) a February 21, 2025 status conference--all of which occurred before the start of the trial in this case on February 25, 2025.  See United States v. Navarro, *et al.*, CR 22-340-AB-1. (Dkts. 156, 162, 163.) Therefore, the only reasonable inference drawn is that this information was conveyed before or during the trial in this case. This was not in Navarro's declaration. From this date, Navarro's testimony is henceforth spliced with his information that existed when the defendants were presumably before or in trial and is not new, but also tainted since Navarro simply learned of the case from one of the defendants while in custody at the courthouse.

3

**III. The Testimony of Daniel Navarro is Not Credible**

Navarro's testimony regarding J.M.'s alleged confession came only in the form of unpreserved kites passed to Navarro fourth-hand through a number of other inmates such as "Player," "Bad Boy," and "G." Despite admitting to speaking with J.M. in the Secure Housing Unit ("SHU"), and purportedly giving J.M. legal counsel, it was only through these now unavailable kites that J.M. allegedly confessed. (Navarro Dec. Dkt 1803.) At the evidentiary hearing, Navarro claimed he saw J.M. send kites personally, however, the particular kites with J.M.'s purported confessions confusingly were passed to him through many other inmates. The Court's questioning raised additional credibility concerns. Navarro's declaration stated one of the kites he received said J.M. explained he was in the SHU, but Navarro and J.M. were in the SHU together and this was common knowledge. (Navarro Dec. Dkt 1803.) It would not make sense that this common experience be shared in a kite between two inmates already in the SHU and the same floor. The Court also asked about inmates conversing in the SHU which left the inference that inmates would not send a kite confession when a personal discussion in the housing unit was feasible.

Navarro's recounting of J.M.'s confession would also be incomplete given the facts proven at trial. The alleged kite only partially contained the lethal force used on J.M. and failed to explain Bencom's stabbing. (Navarro Dec. Dkt 1803.) Navarro's declaration, as he later admitted at the evidentiary hearing, also left out specifics regarding the preservation of the kites. Only during cross-examination did Navarro name BOP Officer Franklin as the officer who allegedly took the kites. When confronted with this

4

omission, Navarro feigned forgetfulness and claimed he did not remember whether he told defendant Carlos Gonzalez's counsel this information when he drafted the declaration. Navarro also claimed bad eyesight as the reason he could not review his declaration fully, but did not explain if this was an issue when reviewing J.M.'s alleged kites. In sum, the cross-examination revealed serious credibility concerns regarding his testimony.

## IV. The Testimony of Johnny G. Macias Should Be Stricken

This Court should strike Macias' declaration after he invoked his Fifth Amendment privilege. "Where a witness asserts a valid privilege against self-incrimination on cross-examination, all or part of that witness's testimony must be stricken if invocation of the privilege blocks inquiry into matters which are 'direct' and are not merely 'collateral.'" United States v. Seifert, 648 F.2d 557, 561 (9th Cir. 1980) (citing United States v. Williams, 626 F.2d 697, 702 (9th Cir. 1980). Here, Macias invoked at all points of counsel's direct examination which constituted the direct matters underlying his declaration. Macias invoked when counsel asked:

- Whether Macias' prior declaration was true;
- The time period Macias lived with Navarro;
- Any of J.M.'s prior statements;
- Whether Macias received kites from J.M.;
- Any information about J.M.'s alleged involvement in the Green Light Gang and whether J.M recruited him;
- Whether J.M. admitted to stabbing his cellmate; and
- Macias' character assessments of Navarro and J.M.

This subject matter constituted direct matters underlying his declaration. His unavailability at the evidentiary hearing due to his

5

valid invocation of his Fifth Amendment right, makes his declaration inadmissible without cross-examination and further testimony. To the extent his testimony can be preserved at any point, the fact that Macias, Lerma's former cellmate, went into protective custody because of his drug debt to the Mexican Mafia is probative as to the credibility and voluntariness of the declaration that he later withdrew from testimony because of his invocation.[2]

**V.  CONCLUSION**

For the foregoing reasons, the government respectfully requests that this Court deny defendants' motions for a judgment of acquittal and a new trial. (Dkts. 1799, 1800, 1802, 1803, 1804, 1805, 1807, 1808, 1809.)

---

[2] As noted during the February 23, 2026 evidentiary hearing, counsel for defendant Lerma apparently conferred with Macias and obtained his signed declaration without the benefit of Macias's counsel being present, despite knowing that Macias had a pending federal criminal trial. See also Dkt. 1912 ¶ 4 (counsel acknowledging Macias' pending criminal case and where he was housed).

6